Argued and submitted July 11, 1984, affirmed in part, remanded in part January 29, reconsideration denied March 26, 1985

# LYONS,
*Respondent on Review/*
*Petitioner on Review.*

*v.*

# PEARCE,
*Petitioner on Review/*
*Respondent on Review.*

(C82-12-38974; CA A27171; SC S30519, S30602)

694 P2d 969

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for petitioner on review/respondent on review. With him on the brief was Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Clint A. Lonergan, Portland, argued the cause for respondent on review/petitioner on review. With him on the brief were Howard R. Lonergan and Richard L. Lonergan, Portland.

ROBERTS, J.

.

### ROBERTS, J.

██ ██ In this post-conviction case there are two issues: whether petitioner's guilty plea was knowing and voluntary, and whether petitioner was denied effective assistance of counsel. ORS 138.530 provides:

> "(1) Post-conviction relief pursuant to ORS 138.510 to 138.680 shall be granted by the court when one or more of the following grounds is established by the petitioner:
>
> "(a) A substantial denial in the proceedings resulting in petitioner's conviction, or in the appellate review thereof, of petitioner's rights under the Constitution of the United States, or under the Constitution of the State of Oregon, or both, and which denial rendered the conviction void.
>
> "* * * * *"

The Court of Appeals held that the trial court's failure personally to advise defendant that a conviction could result in deportation did not violate either the state or federal constitution but remanded the case for the trial court to address the claim of the denial of effective assistance of counsel, 66 Or App 777, 676 P2d 905 (1984).[1] We affirm the Court of Appeals on the first point but conclude that there was a denial of effective assistance of counsel.[2]

Petitioner pleaded guilty to the charge of theft of unemployment benefits. ORS 164.055. Petitioner had previously been convicted of assault in the second degree as the

---

[1] A companion decision is *Lyons v. Pearce, (Lyons II)*, 298 Or 569, 694 P2d 978 (1985). That opinion also involves the issue of effective assistance of counsel but in connection with a first offense rather than a second offense as is the case here. Because of the significance of a second offense on these facts in determining the question of the effective assistance of counsel and because the question of whether petitioner's guilty plea was knowing and voluntary was raised here, we address the second conviction first.

[2] Petitioner Pearce argues, in a separate petition, that the Court of Appeals was incorrect to decide, on the one hand, that defense counsel may be constitutionally ineffective for failing to advise a client of the possibility of deportation, while at the same time upholding a guilty plea, even if defendant had no knowledge of the possibility of deportation. According to Pearce, this sets a new standard for adequacy of counsel. We hold here that in order for a guilty plea to be valid, defendant must know of the possibility of deportation. The trial court found that defendant was aware of deportation because he acknowledged that he read the petition for guilty plea on which that information appeared. The trial court also found that defendant consulted with his attorney about the contents of the petition. Our decision upholding the guilty plea as both informed and assisted by adequate counsel eliminates the inconsistencies petitioner asserts.

result of a stipulated facts trial. Petitioner is an alien and a citizen of Jamaica, and because of his conviction he faces possible deportation. 8 USC § 1251(a)(4).[3] He did not appeal from the conviction.

Prior to the entry of the guilty plea, the trial judge asked petitioner if he had read the petition to enter a plea of guilty. Petitioner said he had not. The court asked him if he could read. He said yes. The court then instructed him to read the petition and confer with his counsel. Included in the petition was this statement: "THIS IS TO ADVISE YOU IF YOU ARE NOT A CITIZEN OF THE UNITED STATES, CONVICTION OF A CRIME MAY RESULT IN DEPORTATION FROM ADMISSION [sic] TO THE U.S.A. OR DENIAL OF NATURALIZATION."

After a recess, the following exchange occurred between the court and petitioner.

"Q: [By the Court]: All right, Mr. Lyons, you have had an opportunity to read the petition in full?

"A: Yes.

"Q: And you still wish to enter a plea?

"A: Yes.

"Q: Are you under the influence of alcohol or any drug at the present time?

"A: No.

"Q: And you are fully aware that you have a right to have a jury trial, if you should wish to do so?

"A: Yes.

---

[3] This second conviction, obtained through petitioner's plea of guilty, is petitioner's second crime potentially involving moral turpitude and renders him vulnerable to deportation.

8 USC 1251(a)(4) provides:

"(a) * * * Any alien in the United States (including an alien crewman) shall, upon the order of the Attorney General, be deported who —

"* * * * *

"(4) is convicted of a crime involving moral turpitude committed within five years after entry and either sentenced to confinement or confined therefor in a prison or corrective institution, for a year or more, or who at any time after entry is convicted of two crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial * * *."

"Q: Let me put it this way: If you enter a plea, there will be no trial.

"A: I understand that.

"Q: And what you want to do is to enter a plea by signing the petition; is that correct?

"A: Yes.

"THE COURT: Then based on this representation, I am satisfied that this is a decision that Mr. Lyons has made after consultation with his attorney and that it is a voluntary decision on his part, and I will allow him to withdraw his plea of not guilty and ask him how he pleads to the charge of Theft in the First Degree?

"THE [PETITIONER]: Guilty."

The court then accepted petitioner's guilty plea. The United States Immigration Department later began deportation proceedings.

At the post-conviction hearing, petitioner testified that when he signed the plea petition and entered the guilty plea he did not know his conviction could result in deportation. He also testified that he had not read the plea petition and that his counsel had not discussed with him the possibility of deportation. The latter was confirmed by the testimony of the attorney as well as by the attorney's failure to ask the sentencing judge for a recommendation against deportation.[4]

---

[4] The post-conviction court stated:

"Now, the transcript — First of all, with respect to the advice to the Defendant that, if he is not a citizen of the United States, conviction of a crime may result in deportation from, admission to the United States or denial of naturalization, the material which is typed in bold face at the bottom of the first page of the petition to enter a plea of guilty. That statute was enacted by the 1977 legislature, and, as I recall — and immediately produced litigation, and it resulted in a substantial number of legislative hearings before the Judiciary Committee of, I believe, both the House and the Senate in 1979.

"At that time, the Judiciary Committee of both Houses, I am satisfied, were fully aware that the way in which this particular warning was handled, as well as a multitude of other constitutional warnings which have been engrafted on our judicial procedure, particularly in this County — are handled by having a formal plea petition which is given to the Defendant to read, to discuss with his attorney, to sign. And I am satisfied from the legislative history as I know it that no one ever expected the plea petition to be read by the Court to the Defendant. It is the responsibility of Counsel to see that the petition is read, or, if not read in full, fully understood.

"It is the responsibility of the Court to question the particular Defendant and,

Petitioner contends that the failure of the court orally to advise him of the possibility of deportation, and the failure of his attorney to so inform him, violated his rights under Article I, sections 10 and 11, of the Oregon Constitution and the Fourteenth Amendment to the United States Constitution because his plea was not knowingly, intelligently and voluntarily made. He charges that the judge and his attorney failed to comply with applicable statutes and therefore violated his constitutional rights.

### *Validity of Guilty Pleas*

■ There are two ways by which a criminal defendant's guilt may be established so that the deprivation of his liberty will comport with due process of law. The first is by trial in which the state has proved the elements of the crime beyond a reasonable doubt. A defendant may waive a jury trial and be tried by the court. The trial must be conducted in accordance with the procedures enumerated in other constitutional provisions that a defendant in a "criminal case" or a "criminal prosecution" is due. The second is by the defendant's own admission that he is guilty of the charged offense. *Henderson v. Morgan*, 426 US 637, 647-48, 96 S Ct 2253, 49 L Ed 2d 108 (1976) (White, J., concurring). This plea of guilty is a waiver of, among other constitutional rights, the privilege against self-incrimination, the right to a jury trial and the right to confront one's accusers.

■ ■ Guilty pleas implicate both the Fifth and Sixth

---

if necessary, his counsel, to satisfy himself that the petition has been read in full, or, if there is a problem with reading that it has been explained in full, in all of its details, by Counsel to the Defendant.

"* * * * *

"Now he says he hadn't read it. I told him to read it, sent him back with his attorney to read it; he came back before the Court, and he entered a plea.

"I think any reasonable authority on judicial procedure would say that, if the Defendant did not read the petition with that material on the bottom of the first page at that time after being sent back by the Court for the express purpose of doing so, and then coming back before the Court, making the kind of representations he did, that is a knowing and voluntary waiver and, indeed, a deception and fraud on the Court.

"I am satisfied that it is inappropriate to set aside the plea, and I decline to do so for the reasons stated.

"That will be the order of the Court."

Amendments of the federal constitution[5] and for this reason the United States Supreme Court has required that guilty pleas be voluntary and made with knowledge of the consequences, *Brady v. United States,* 397 US 742, 748, 90 S Ct 1463, 25 L Ed 2d 747 (1970). The Fourteenth Amendment makes this minimum standard applicable to the states. *Boykin v. Alabama,* 395 US 238, 89 S Ct 1709, 23 L Ed 2d 274 (1969). A plea of guilty also requires waiver of state constitutional rights embodied in Article I, sections 11 and 12, of the Oregon Constitution.[6]

■ We have examined in other contexts the adequacy of a defendant's waiver of state constitutional rights. *See State v. Sparklin,* 296 Or 85, 672 P2d 1182 (1983); *State v. Mains,* 295 Or 640, 669 P2d 1112 (1983); *State ex rel Russell v. Jones,* 293 Or 312, 647 P2d 904 (1982); We have required that a defendant understand the rights he is waiving and that he waive them free from coercion. The advice of counsel plays a

---

[5] The Fifth Amendment to the United States Constitution provides:

"No person * * * shall be compelled in any criminal case to be a witness against himself * * *."

The Sixth Amendment to the United States Constitution provides:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defence."

[6] Article 1, section 11, of the Oregon Constitution provides:

"In all criminal prosecutions, the accused shall have the right to public trial by an impartial jury in the county in which the offense shall have been committed; to be heard by himself and counsel; to demand the nature and cause of the accusation against him, and to have a copy thereof; to meet the witnesses face to face, and to have compulsory process for obtaining witnesses in his favor; provided however, that any accused person, in other than capital cases, and with the consent of the trial judge, may elect to waive trial by jury and consent to be tried by the judge of the court alone, such election to be in writing; provided, however, that in the circuit court ten members of the jury may render a verdict of guilty or not guilty, save and except a verdict guilty of first degree murder, which shall be found only by a unanimous verdict, and not otherwise; provided further, that the existing laws and constitutional provisions relative to criminal prosecutions shall be continued and remain in effect as to all prosecutions for crimes committed before the taking effect of this amendment."

Article I, section 12, of the Oregon Constitution provides:

"No person shall be put in jeopardy twice for the same offence (sic), nor be compelled in any criminal prosecution to testify against himself."

significant role in aiding a defendant in the decision. *See State v. Sparklin, supra.*

Guilty pleas are regulated by statute. ORS 135.385(1) and (2)(d) provide:

"(1) The court shall not accept a plea of guilty or no contest to a felony or other charge on which the defendant appears in person without first addressing the defendant personally and determining that the defendant understands the nature of the charge.

"(2) The court shall inform the defendant:

"* * * * *

"(d) That if the defendant is not a citizen of the United States conviction of a crime may result, under the laws of the United States, in deportation, exclusion from admission to the United States or denial of naturalization."[7]

ORS 135.385 was enacted in 1973, Oregon Laws 1973, chapter 836, section 167, and was modeled on ABA Standards § 1.4 and *Boykin v. Alabama, supra.* Commentary to Proposed Oregon Criminal Code § 260 (1972). Subsection (2)(d) was added in Oregon Laws 1979, chapter 118, section 1.

Subsection (1) requires the court to address the defendant personally and determine that the defendant understands the nature of the charge. Subsection (2) requires the court to inform a defendant, among other things, that if he is not a citizen of the United States the conviction of a crime may result in deportation.

■ The court met the statutory obligation when it recessed the proceeding to allow petitioner the opportunity to read the plea agreement and to consult with counsel. Petitioner's failure to read the plea agreement cannot now be used to claim that his plea was uninformed and involuntary. We hold that ORS 135.385(2)(d) does not require the trial court to address a defendant orally about the possibility of deportation. It is sufficient if the court satisfies itself that a defendant has been so informed. Petitioner here told the court that he could read and that he had, in fact, read the plea agreement containing the information regarding possible deportation

---

[7] We note that the printed material on the plea agreement signed by petitioner omits the word "exclusion" but we place no particular significance on that.

and that he had, in fact, conferred with counsel. No more was required of the court.

Petitioner asserts that written notice of the specter of deportation is constitutionally insufficient and that the judge must inform defendants orally of this possible consequence of a judgment of conviction. Petitioner then cites to Article I, sections 10 and 11, of the Oregon Constitution. Although no argument is articulated, petitioner's apparent assertion is that Article I, section 10, is a due process clause and it mandates a higher standard of waiver of criminal procedure rights than the Fourteenth Amendment to the United States Constitution.

■ We have held that "Article I, section 10 of the Oregon Constitution which guarantees that 'every man shall have remedy by due course of law for injury done him in his person, property or reputation,' is neither in text nor in historical function the equivalent of a due process clause * * *," *Cole v. Dept. of Rev.,* 294 Or 188, 191, 655 P2d 171 (1982); *see also State v. Burrow,* 293 Or 691, 695, n 5, 653 P2d 226 (1982). In any case, standards for an adequate waiver of state constitutional rights are found, not in a due process clause but in the substantive guarantees themselves. In *State v. Sparklin, supra,* for example, we examined the historical function of the right to counsel in order to discern the parameters of a valid waiver of that right.

In *Dixon v. Gladden,* 250 Or 580, 444 P2d 11 (1968), we discussed the constitutionality of a guilty plea with reference to the federal due process clause. We stated: "The constitutional requirement is that the defendant have understanding, not that it be imparted to him in some particular manner." 250 Or at 587. We indicated that "[a] plea of guilty cannot be said to be understandingly made if the defendant does not know the legal consequence of such a plea." 250 Or at 585.

■ ■ Article I, sections 11 and 12, require as well that the defendant waive these substantive rights only with knowledge of the "legal consequences" of the plea. Deportation is one such legal consequence. However, we decline to hold that, as a matter of state constitutional law, a particular form of notice is required. The trial judge must inform a defendant of the legal consequences of a guilty plea, in this case, deportation,

and the fact that the judge did so and that defendant acknowledged his understanding of the consequences must be discernable from the record. These requirements were met in this case. Petitioner's assertion that he did not read the plea agreement comes too late.

Federal circuit courts have interpreted the federal constitution to mandate neither the form by which the court must advise defendant of the consequences of the plea, nor even disclosure that deportation could result from conviction. In *Brady v. United States, supra,* the United States Supreme Court adopted the following standard for voluntary guilty pleas:

> "[A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes)." 397 US at 755.[8]

The federal circuit courts have held consistently that vulnerability to deportation is a "collateral" rather than a "direct" consequence of a guilty plea and therefore the trial courts have no duty to inform alien defendants of the possibility of deportation, either on constitutional grounds, *United States v. Santelises,* 509 F2d 703 (2d Cir 1975), or under Federal Rule of Criminal Procedure 11,[9] *Fruchtman v.*

---

[8] The court adopted this standard from *Shelton v. United States,* 242 F2d 101, 115 (5th Cir) (Tuttle, J., dissenting), *conviction aff'd on rehearing en banc* 246 F2d 571 (5th Cir 1957), *rev'd on confession of error on other grounds,* 356 US 26, 78 S Ct 563, 2 L Ed 2d 579 (1958).

[9] Federal Rule of Criminal Procedure 11 currently provides in relevant part:

"* * * * *

"(c) Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform him of, and determine that he understands, the following:

"(1) The nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law, including the effect of any special parole term; and

"* * * * *

"(3) that he has the right to plead not guilty or to persist in that area if it has

*Kenton,* 531 F2d 946 (9th Cir), *cert denied* 429 US 895, 97 S Ct 256, 50 LEd 2d 178 (1976); *Michel v. United States,* 507 F2d 461 (2d Cir 1974); *United States v. Sambro,* 454 F2d 918 (DC Cir 1971); *Trujillo v. United States,* 377 F2d 266 (5th Cir 1967). We find no violation of federal due process.

### Assistance of Counsel

On the issue of ineffective assistance of counsel, petitioner makes two claims. First, counsel should have advised petitioner that if he pleaded guilty he could be subject to deportation. Second, his attorney should have asked the trial judge for a recommendation against deportation because a recommendation would have barred deportation. Petitioner relies on Article I, sections 10 and 11, of the Oregon Constitution and the Sixth and Fourteenth Amendments to the United States Constitution.

We begin first with the applicable statute. ORS 135.425 provides:

"(1) Defense counsel shall conclude a plea agreement only with the consent of the defendant, and shall ensure that the decision whether to enter a plea of guilty or no contest is ultimately made by the defendant.

"(2) To aid the defendant in reaching a decision, defense counsel, after appropriate investigation, shall advise the defendant of the alternatives available and of factors considered important by him or the defendant in reaching a decision."

This statute was intended to embody established professional ethics regarding the role of defense counsel in negotiated pleas.[10] Commentary to Proposed Oregon Criminal Procedure Code § 265 (1972).

Commentators have decried the criminal defense

---

already been made, and he has the right to be tried by a jury and at that trial has the right to assistance of counsel, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself; * * *."

[10] ORS 135.425 enumerates defense counsel's responsibility with regard to negotiating plea agreements. We find no statute addressing the duties of defense counsel when representing clients who enter unnegotiated guilty pleas. The record establishes that a plea agreement was reached in this case. The district attorney made a "plea offer" and the petitioner in accepting it stated, "I would like to have the matter resolved today."

counsel's failure to inform non-citizen defendants of the deportation consequences of convictions and of the failure to seek a recommendation against deportation. *See* Roberts, *Pitfalls in Counselling Aliens and Immigrants Advice to the General Practitioner,* 36 No. 12 Wash State Bar News 11 (1982) and Wexler and Neet, *The Alien Criminal Defendant: An Examination of Immigration Law Principles for Criminal Law Practice,* 2 Immigration and Nationality L Rev 285 (1978-79). For aliens who have chosen to live in the United States, deportation very well may be "a cruel and barbarous result [which] would be a national reproach." *United States ex rel Klonis v. Davis,* 13 F2d 630, 631 (2nd Cir 1926).

 In a country that was founded and settled by immigrants, where immigration has continued with each succeeding generation and where millions of aliens continue to respond to the invitation of the Statue of Liberty,[11] it is important to recognize the significance associated with deportation. A deported alien may be required to sever family ties, become impoverished and return to a society in which he no longer can function and may, indeed, face life-threatening conditions. It portends drastic consequences in many cases. It is in all cases "a life sentence of banishment," *Jordan v. De George,* 341 US 223, 232, 71 S Ct 703, 95 L Ed 886 (1951) (Jackson, J., dissenting). This necessarily places a great responsibility on those attorneys who represent persons who may be subject to deportation. Given the potentially drastic consequences, the "factors considered important" of which

---

[11] On a bronze plaque inside the pedestal of the Statue of Liberty is inscribed a sonnet, "The New Colossus," by Emma Lazarus. The poem reads:

Not like the brazen giant of Greek fame,
With conquering limbs astride from land to land;
Here at our sea-washed, sunset gates shall stand
A mighty woman with a torch, whose flame
Is the imprisoned lightning, and her name
Mother of Exiles. From her beacon-hand
Glows world-wide welcome; her mild eyes command
The air-bridged harbor that twin cities frame.
"Keep ancient lands, your storied pomp!"
 cries she
With silent lips. Give me your tired, your
 poor,
Your huddled masses yearning to breathe free,
The wretched refuse of your teeming shore.
Send these, the homeless, tempest-tost to me,
I lift my lamp beside the golden door!

defense counsel, by statute, "shall advise the defendant" certainly encompasses the possibility of deportation. The violation of a statute alone is insufficient to warrant post-conviction relief. Such relief is granted only to remedy violations of constitutional rights. ORS 138.530.

In *Shipman v. Gladden,* 253 Or 192, 453 P2d 921 (1969), we held that the failure of retained counsel timely to file notice of appeal after it had been requested and agreed to was incompetence as a matter of law and was the denial of effective assistance of counsel. *See also Welch v. Gladden,* 253 Or 228, 453 P2d 907 (1969) (holding appointed counsel to the same standard as retained counsel in perfecting an appeal) and *Holbert v. Gladden,* 253 Or 435, 455 P2d 45 (1969) (counsel's withdrawal of an appeal without a finding that the appeal was frivolous deprived petitioner of his right to effective assistance of counsel). These cases were decided on the basis of the Fourteenth Amendment due process provision.

In *Krummacher v. Gierloff,* 290 Or 867, 871, 627 P2d 458 (1981), we noted that there has been a "shift of scrutiny in recent cases from the rudiments of the trial to the quality of representation by counsel" which also reflects a shift from the general requirements of the due process clause of the Fourteenth Amendment to the United States Constitution to the more specific constitutional rights to counsel. We interpreted both the state and federal constitutional guarantees of assistance of counsel to require: "* * * an adequate performance by counsel of those functions of professional assistance which an accused person relies upon counsel to perform on his behalf. Any standard formulated to effectuate these constitutional guaranties should focus on the adequacy of the attorney's performance rather than upon the general competency of the lawyer." 290 Or at 872. The corresponding footnote explains that "the term 'adequate' assistance of counsel may be more accurate than 'effective' assistance of counsel. Counsel cannot always be effective, but they must always be 'adequate' to the task." 290 Or at 872 n 3.

We determined in *Krummacher* that there is no succinctly stated standard that can be applied objectively to every case. Rather, it is preferable to examine the duties and functions counsel is to perform. We also concluded that the

function of counsel is particularly important when a defendant is called upon to waive a fundamental right such as is required when entering a guilty plea. 290 Or at 875.

■ One function a criminal defense attorney performs for a client is to disclose the consequences of a guilty plea and conviction. For non-citizen defendants awareness of the possibility of deportation is necessary to an informed plea.

■ In this case, the court, at the time set for accepting defendant's guilty plea, specificially instructed petitioner to read the petition to enter a plea of guilty and to confer with his attorney. The court then found that petitioner was entering his plea "after consultation with his attorney." The plea petition explained that deportation was a possible consequence of conviction. The trial judge told defendant to review this document with his attorney. From defendant's acknowledgment that he had done so, the court could conclude that the lawyer had discussed with petitioner not only the constitutional rights he would be waiving in entering a guilty plea and what punishment might be imposed, but the language advising petitioner of possible deportation as well. Petitioner asserted at the post-conviction relief hearing and his attorney agreed that they had not, in fact, discussed deportation. However, we are bound by the finding of the court in the post-conviction case. As in the question of the validity of the guilty plea, petitioner's and counsel's revelation that they did not discuss the possibility of deportation comes too late.

■ We turn next to the question whether the attorney's failure to ask the court for a recommendation against deportation, 8 USC 1251(b),[12] constitutes ineffective assistance of counsel. Commentators have observed that the recommendation against deportation is a significant tool available to forestall deportation of which defense attorneys should be

---

[12] 8 USC 1251(b) allows the sentencing court to recommend against deportation. The federal statute provides in relevant part:

"The provisions of subsection (a)(4) of this section respecting the deportation of an alien convicted of a crime or crimes shall not apply * * * (2) if the court sentencing such alien for such crime shall make, at the time of first imposing judgment or passing sentence, or within thirty days thereafter, a recommendation to the Attorney General that such alien not be deported, due notice having been given prior to making such a recommendation to representatives of the interested State, the Service, and prosecution authorities, who shall be granted an opportunity to make representations in the matter. * * *"

aware. Wexler and Neet, *supra,* 2 Immigration and Nationality L Rev at 309; Appleman, *The Recommendation Against Deportation,* 58 ABAJ 1294 (1972). Once obtained from the sentencing court, a recommendation is absolutely binding upon the Attorney General and leaves no discretionary authority to deport. This important statutory protection cannot be overlooked by defense attorneys representing alien defendants.

 Equating an attorney's failure to request a recommendation against deportation from the court with failure to perfect an appeal, as in *Shipman* and *Welch,* is not difficult when we consider the consequences of both. In one the defendant faces certain exile from his chosen country and in the other the defendant faces certain imprisonment or other imposed penalties. Indeed, the exile may carry with it more serious long range consequences. We hold that failure of counsel to request from the court a recommendation against deportation where the defendant, in fact, was subject to deportation as a result of his conviction rendered counsel's assistance constitutionally inadequate. This requires setting the sentence aside. On remand for resentencing counsel will consider whether to make the request for a recommendation against deportation.

The Court of Appeals remanded this case to the trial court because the trial court did not specifically address the claim of ineffective assistance of counsel. We decline to remand on this ground because of our conclusion that the court was justified in finding that petitioner had consulted with counsel and because there is no dispute that counsel did not request from the court a recommendation against deportation.

Petitioner's sentence is set aside. This case is remanded to the trial court for further proceedings.