Argued and submitted July 3, 2002, affirmed January 28, 2004

### JOSE LUIS VEGA GONZALEZ,
*Respondent,*

*v.*

### STATE OF OREGON,
*Appellant.*

## 01-2018; A115934

83 P3d 921

Timothy A. Sylwester, Assistant Attorney General, argued the cause for appellant. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Alan L. Gallagher argued the cause for respondent.

Before Edmonds, Presiding Judge, and Armstrong and Wollheim,* Judges.

ARMSTRONG, J.

---

* Wollheim, J., *vice* Kistler, J., resigned.

**ARMSTRONG, J.**

The state appeals from a judgment granting post-conviction relief to petitioner on the ground that his trial counsel provided constitutionally deficient representation in the course of advising him about his decision to plead guilty to two drug offenses. The state argues that petitioner's trial counsel met his duty to provide adequate legal assistance regarding petitioner's decision to plead guilty. We affirm.

Petitioner entered the United States in 1987 and has lived in Oregon since 1989. His three children, brother, and sister live in Oregon. Petitioner was charged in Oregon in 2000 with a number of felonies relating to the possession and delivery of a controlled substance. ORS 475.992. At the time of his arrest on the drug charges, petitioner held an annually renewable work visa.

Petitioner agreed to plead guilty to two of the charges against him, delivery of a controlled substance and possession of a controlled substance. Before petitioner entered his plea, the trial court complied with ORS 135.385 by telling petitioner that a guilty plea *might* affect his immigration status and cause his deportation; cause the denial of an application for United States citizenship; and, if petitioner left the United States, result in a denial of admission to the United States on his attempt to return. At the hearing, petitioner's counsel also told him that entering a guilty plea "may [have] an impact" on his immigration status. That was the extent of counsel's advice to petitioner regarding deportation.[1] At the time of the hearing, counsel knew that petitioner had an immigration lawyer in California but did not know what that lawyer was doing for petitioner.

Petitioner pleaded guilty to the two charges. After the hearing, the Immigration and Naturalization Service (INS)[2] began proceedings to deport petitioner.[3] Petitioner

---

[1] Deportation proceedings are now called "removal proceedings." *See* 8 USC § 1229 (2000). Because the consequences of removal are the same as deportation, we use the term deportation rather than removal throughout this opinion for clarity.

[2] The INS was abolished by the Homeland Security Act of 2002, Pub L 107-296, § 471, 116 Stat 2135, 2205. Immigration matters formerly administered by the INS are now administered by the Bureau of Citizenship and Immigration Services

thereafter learned that, contrary to the statements by his counsel at the plea hearing, deportation was not merely a possibility but was a certainty for him if the INS began deportation proceedings as a result of his guilty plea. Petitioner brought an action for post-conviction relief, alleging numerous claims. The post-conviction court concluded that petitioner had been provided inadequate legal assistance at the plea hearing as a result of counsel's advice about the effect of his guilty plea on petitioner's immigration status. The court accordingly vacated the plea and reinstated the criminal action against petitioner.

■ The state argues that petitioner's trial counsel provided him with constitutionally adequate legal assistance by informing him that he might be deported as a result of his guilty plea. According to the state, counsel did not need to inform petitioner of the "degree of risk of deportation that he face[d] if convicted of the charged crime."

> "In reviewing a claim of inadequate assistance of counsel, we are bound by the post-conviction court's factual findings that are supported by evidence in the record, but we make our own determination of the constitutional issues [—] * * * whether counsel was ineffective or inadequate and whether the petitioner was prejudiced as a result."

*Loveless v. Maass,* 166 Or App 611, 615, 999 P2d 537 (2000) (citations omitted). *See also* ORS 135.530.

■ "[C]onstitutionally adequate performance by counsel in advising a client whether to enter a negotiated plea of guilty entails disclosure of the consequences of a guilty plea and conviction." *Hartzog v. Keeney,* 304 Or 57, 63, 742 P2d 600 (1987). Most states and federal circuits have concluded that the applicable state and federal constitutions do not impose on criminal defense lawyers the duty to inform their clients of the collateral consequences of a guilty plea. Gabriel

---

(BCIS), a Bureau of the Department of Homeland Security. *Id.* Although the 2002 changes do not affect petitioner's case, we note them to clarify the state of immigration law.

[3] The United States Attorney General is authorized to delegate his or her authority to initiate and oversee deportation matters to other agencies. 8 USC § 1103 (2000). At the time that the INS brought the deportation proceeding against petitioner, the Attorney General had delegated most of that authority to the INS. *See* 8 CFR § 2.1 (2002).

J. Chin & Richard W. Holmes, Jr., *Effective Assistance of Counsel and the Consequences of Guilty Pleas,* 87 Cornell L Rev 697, 699 (2002). Although

> "lawyers must advise clients of the direct consequences of a guilty plea—such as the period of incarceration and the fine that will be imposed at sentencing—eleven federal circuits, more than thirty states, and the District of Columbia have held that lawyers need not explain collateral consequences, which, although they might follow by operation of law, are not part of the penalty imposed by the particular statute the defendant is accused of violating. Apparently no court rejects the rule."

*Id.* (citations omitted).

■        Oregon is among the states that follow the collateral consequences rule.[4] Notwithstanding the general applicability of the collateral consequences rule, the Oregon Supreme Court concluded in *Lyons v. Pearce,* 298 Or 554, 694 P2d 969 (1985), that, for attorneys to provide constitutionally adequate representation to clients who are considering whether to accept a guilty plea, Oregon attorneys must tell their alien clients about the risk of deportation.

Lyons involved post-conviction claims by an alien who had pleaded guilty to a theft charge and had then become the subject of a deportation proceeding. The petitioner sought post-conviction relief that would permit him to withdraw his plea and go to trial on the charge. Among other claims, the petitioner contended that his attorney had provided him with constitutionally inadequate legal assistance by failing to advise him that he could be deported as a result of his conviction on the charge. The court agreed with petitioner that an attorney providing constitutionally adequate assistance to a client such as petitioner had to tell the client

---

[4] "Federal courts have held that, under the United States Constitution, attorneys are not required to inform clients of the collateral consequences of a guilty plea. The same is true under Article I, section 11, of the Oregon Constitution." *Chew v. State of Oregon,* 121 Or App 474, 477, 855 P2d 1120, *rev den,* 318 Or 24 (1993) (citations omitted).

that deportation could result from his conviction. *Id.* at 565-67. Nevertheless, the court affirmed the denial of post-conviction relief on that claim because statements that the petitioner had made to the court at his plea hearing about the discussions that he had had with his attorney prevented him from obtaining post-conviction relief. *Id.* at 561-62, 567. Although the court denied post-conviction relief on that ground, the principle that *Lyons* established about the need to give alien clients information about deportation as a consequence of criminal convictions applies to this case.

Since *Lyons*, federal immigration law has changed dramatically.[5] When the court decided *Lyons*, there were a variety of mechanisms available to aliens—even those convicted of the crimes of which petitioner was convicted—to avoid deportation.[6] By the time that petitioner pleaded guilty

---

[5] Since *Lyons*, changes implemented by the Anti-Drug Abuse Act of 1988, Pub L 100-690, 102 Stat 4181; the Immigration Act of 1990, Pub L 101-649, 104 Stat 4978; the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub L 104-208, 110 Stat 3009; and the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub L 104-132, 110 Stat 1214, have altered federal immigration law dramatically. When *Lyons* was decided, the United States Attorney General had prosecutorial discretion whether to bring deportation proceedings against an alien if the alien was deportable. *Reno v. American-Arab Anti-Discrimination Comm.,* 525 US 471, 483-84, 119 S Ct 936, 142 L Ed 2d 940 (1999). Although that remains true, the current immigration framework, still based on the Immigration and Nationality Act of 1952, (INA), Pub L 82-414, 66 Stat 163 (*codified at* 8 USC §§ 1101-1557), no longer affords aliens convicted of certain crimes the same chance of remaining in the country despite their status as "deportable" or "removable."

[6] The Anti-Drug Abuse Act of 1988, Pub L No 100-690, § 7342, 102 Stat 4181, 4469-70, added subsection (A)(43) to 8 USC § 1101(a). That provision treats aliens convicted of "aggravated felonies" differently from aliens convicted of other crimes. If an alien is convicted of an aggravated felony, then the alien will be ineligible for asylum, 8 USC § 1158b(2)(A)(ii) (2000); cancellation of removal, 8 USC § 1229b(a)(3) (2000); or voluntary departure, 8 USC § 1229c(b)(1)(C). Any controlled substance crime categorized as a felony by either federal or state law is an aggravated felony. *United States v. Ibarra-Galindo*, 206 F3d 1337, 1339 (9th Cir 2000). When *Lyons* was decided, a Judicial Recommendation Against Deportation (JRAD) could also prevent an alien's deportation if entered by a trial judge at sentencing. 8 USC § 1251(b) (1988). As part of the Immigration Act of 1990, Pub L 101-649, § 505, 104 Stat 4978, 5050 (1990), Congress amended 8 USC § 1251(b) to eliminate the judicial recommendation against deportation.

8 USC § 1182(c) (1994)—section 212(c) of the INA—also authorized "any permanent resident alien with 'a lawful unrelinquished domicile of seven consecutive years' to apply for a discretionary waiver from deportation." *INS v. St. Cyr,* 533 US 289, 295, 121 S Ct 2271, 150 L Ed 2d 347 (2001) (quoting 8 USC § 1182(c) (1984)). In *St. Cyr,* the Court noted that, for the period between 1989 and 1995, more than half of these applications for waiver were granted. *Id.* at 296 n 5. The section 212(c)

in 2000 to two drug offenses, none of those mechanisms to avoid deportation was available to him.[7] As a consequence, federal immigration law now makes it more likely than not that an alien convicted of a controlled substances crime that Oregon law classifies as a felony will be deported.[8]

The state argues that, "[i]n the absence of questions from petitioner, his trial counsel was not required to inform him of the *specific degree* of risk of deportation and other immigration consequences of his conviction before advising him to plead guilty." (Emphasis in original.) In the state's view, an attorney fulfills the duty to assist an alien client by informing the client that a guilty plea to an aggravated drug felony "may" subject the client to deportation. Given the dramatic changes in immigration deportation law since *Lyons,* the state's argument falls short. Indeed, stating that a person "may" be subject to deportation implies that there is some chance, potentially a good chance, that the person will not be deported. That is an incomplete and therefore inaccurate statement if made to an alien considering whether to plead guilty to an aggravated felony.

■ Because the current immigration scheme all but requires that aliens convicted of aggravated felonies be

_____

process of appeal and corresponding Attorney General discretion has also been drafted out of federal immigration law. IIRIRA, Pub L 104-208, § 304(b), 110 Stat 3009-597.

[7] We note that the *Lyons* court awarded petitioner relief on his claim of inadequate assistance of counsel because his counsel failed to request a judicial recommendation against deportation. *Lyons,* 298 Or at 568. Had counsel in *Lyons* made such a request and had the trial court granted it, the recommendation would have precluded the INS from deporting the defendant.

[8] An immigrant who is convicted of an aggravated felony is "deportable." 8 USC § 1227(a)(2)(A)(iii) (2000). Indeed, "[a]n alien convicted of an aggravated felony shall be conclusively presumed to be deportable from the United States." 8 USC § 1228(C) (2000). Not only is such an alien deportable, but the Attorney General is required to "begin any removal proceeding [against an alien convicted of an aggravated felony] as expeditiously as possible after the date of the conviction." 8 USC § 1229(d) (2000). 8 USC section 1228 even provides for a streamlined deportation procedure that can be performed by BCIS officials if the alien is not a lawful permanent resident. Thus, if an alien pleads guilty to a controlled substance crime that a state or the federal government makes a felony, then the alien will be deported unless he or she brings a successful collateral attack to the conviction or the Attorney General does not choose to bring a removal proceeding against the alien.

deported, we conclude that petitioner's trial counsel was obligated to tell petitioner that he was pleading guilty to an aggravated felony and that, unless the United States Attorney General or his designee chose not to pursue deportation proceedings against him, he would be deported as a result of his guilty plea. Counsel's failure to give petitioner that information before petitioner pleaded guilty constituted a failure to provide petitioner with constitutionally adequate legal assistance under Article I, section 12, of the Oregon Constitution.

■■ We turn to whether trial counsel's constitutionally inadequate performance prejudiced petitioner. Whether petitioner will ultimately be convicted of the charges against him is irrelevant to the analysis. *Long v. State,* 130 Or App 198, 880 P2d 509 (1994). "[T]he critical issue is not whether petitioner could ultimately have been convicted, but whether he would otherwise have entered into the plea agreement." *Id.* at 204. Petitioner's burden at the post-conviction proceeding was to show, by a preponderance of the evidence, that he would not have entered into the plea agreement if he had been given constitutionally adequate advice about the effect that his guilty plea would have on his immigration status. *Moen v. Peterson,* 312 Or 503, 513, 824 P2d 404 (1991). Petitioner alleged, and the post-conviction court found, that petitioner would not have pleaded guilty if he had been given that advice. We are bound by that finding. The trial court did not err in entering post-conviction relief that allowed petitioner to withdraw his guilty plea.

Affirmed.