Argued and submitted November 9, 2004, decision of Court of Appeals reversed; judgment of circuit court reversed, and case remanded to circuit court for further proceedings April 27, 2006

JOSE LUIS VEGA GONZALEZ,
*Respondent on Review,*

*v.*

STATE OF OREGON,
*Petitioner on Review.*

(CC 01-2018; CA A115934; SC S51309)

134 P3d 955

Brendan C. Dunn, Assistant Attorney General, Salem, argued the cause and filed the brief for petitioner on review.

With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

James N. Varner, Newberg, argued the cause and filed the brief for respondent on review.

Marc Sussman, Portland, filed the brief for *amici curiae* Miles McLeod, American Association of Immigration Lawyers, and Oregon Criminal Defense Lawyers Association.

Before Carson, Chief Justice,** and Gillette, Durham, Riggs, De Muniz,*** Balmer, and Kistler, Justices.

KISTLER, J.

---

** Chief Justice when case was argued.

*** Chief Justice when decision was rendered.

**KISTLER, J.**

The question in this case is whether petitioner's defense counsel provided constitutionally adequate assistance when he advised petitioner that the federal government may deport him if he pleaded guilty. The Court of Appeals held that counsel failed to provide adequate assistance because he did not tell petitioner that, unless the Attorney General or his designee chose not to pursue deportation proceedings, petitioner would be deported. *Gonzalez v. State of Oregon*, 191 Or App 587, 593-94, 83 P3d 921 (2004). We reverse the Court of Appeals decision.

Petitioner is a citizen of Mexico. He entered the United States illegally in 1987 and has lived in Oregon since 1989. In 1995, petitioner received a work permit from the Immigration and Naturalization Service (INS)[1] and began an effort to become a legal resident of this country. Towards that end, petitioner retained an immigration lawyer in California to represent him in a then-pending INS hearing.

Before the INS hearing occurred, the State of Oregon charged petitioner with five counts of possessing, manufacturing, and delivering a controlled substance. The state also sought to forfeit approximately $70,000 that petitioner held in his bank account. In March 2000, petitioner retained a lawyer to represent him on the criminal charges. Petitioner faced a substantial period of incarceration if the state proved the charged crimes, and his defense lawyer spent much of his time negotiating a plea agreement with the district attorney's office. Eventually, the district attorney's office agreed that, if petitioner would plead guilty to one count of possession and one count of distribution, the state would recommend that the trial court sentence petitioner to 90 days in jail with credit for time served and 36 months' probation.

---

[1] In 2002, Congress abolished the INS and transferred its responsibilities to the Bureau of Citizenship and Immigration Services. 116 Stat 2135 (2002). Additionally, Congress now refers to deportation as removal. *See* 8 USC § 1229 (2000) (changing terminology). Because some of the events at issue here occurred before those changes took place, we refer to the agency as the INS and to proceedings to return an alien to his or her country of origin as deportation proceedings.

In discussing the plea offer with petitioner, his trial counsel reviewed the constitutional rights that petitioner would give up if he pleaded guilty. Counsel also advised petitioner of the maximum sentence and fine that the trial court could impose if he were found guilty of the charged crimes. Finally, counsel advised him that pleading guilty "may cause [his] deportation" from the United States, as well as denial of naturalization and future readmission to the United States. Petitioner did not ask his counsel to predict the likelihood of deportation with greater specificity, and his counsel did not do so. Rather, in advising petitioner about the risks of deportation, his counsel followed the terms of a preprinted plea petition.

Relying on his counsel's advice, petitioner pleaded guilty on February 1, 2001, to one count of possessing and one count of distributing a controlled substance. The state dismissed the other three charges, and the trial court imposed the recommended sentence. After petitioner had served his 90-day jail term, the INS initiated deportation proceedings. Petitioner then filed a post-conviction petition, alleging that his counsel's failure to tell him that he would be deported if he pleaded guilty violated his right to the adequate assistance of counsel guaranteed by the state constitution.[2] The post-conviction court agreed with petitioner, and the Court of Appeals affirmed.

The Court of Appeals noted that, under *Lyons v. Pearce*, 298 Or 554, 694 P2d 969 (1985), defense counsel have a state constitutional obligation to advise clients who are not United States citizens and who are considering a guilty plea of the risks of deportation. *Gonzalez*, 191 Or App at 591-92. The Court of Appeals recognized that *Lyons* had held that counsel satisfied that obligation by telling their clients that a conviction "may result" in deportation but concluded that the

---

[2] Petitioner's post-conviction petition contained two claims for relief. In his first claim for relief, petitioner alleged that his trial counsel had failed to provide adequate assistance in violation of the state and federal constitutions because he had failed to advise petitioner that the INS would deport him if he pleaded guilty. In his second claim for relief, petitioner alleged that the trial court had violated the Sixth Amendment and the Due Process Clause because it had accepted his guilty plea without informing him that the INS would deport him. On review, petitioner does not pursue his second claim for relief, and he pursues only the state constitutional inadequate assistance claim alleged in his first claim for relief.

likelihood of deportation is greater now than when this court decided *Lyons*. *Id.* at 591-94. Accordingly, the Court of Appeals held that

> "petitioner's trial counsel was obligated to tell petitioner that he was pleading guilty to an aggravated felony and that, unless the United States Attorney General or his designee chose not to pursue deportation proceedings against him, he would be deported as a result of his guilty plea."

*Id.* at 594. Because petitioner's counsel had told him only that a plea "may result" in deportation, the Court of Appeals held that the petitioner's counsel had not provided constitutionally adequate assistance. It therefore affirmed the judgment of the post-conviction court.

On review, the state acknowledges that one of the charges to which petitioner pleaded was an "aggravated felony."[3] It argues, however, that counsel's use of "may" is still accurate because the Attorney General retains inherent prosecutorial discretion not to initiate deportation proceedings for persons convicted of an aggravated felony, *see Carranza v. INS*, 277 F3d 65, 72 (1st Cir 2002) (recognizing proposition), and that, even when the Attorney General chooses to initiate deportation proceedings, exceptions to deportation remain available, *see* 8 USC § 1231(b)(3)(A) (withholding of removal); *Wang v. Ashcroft*, 320 F3d 130, 141 (2d Cir 2003) (recognizing that person convicted of aggravated felony can avoid deportation when deportation would be contrary to Convention Against Torture).

In his brief on the merits, petitioner does not dispute that the Attorney General may exercise his inherent discretion not to initiate deportation proceedings and that exceptions remain available even for persons convicted of aggravated felonies.[4] He contends, however, that his defense

---

[3] Under federal law, a person who is convicted of an "aggravated felony" has fewer grounds for avoiding deportation than a person who is convicted of a felony. *See* Attila Bogdan, *Guilty Pleas by Non-Citizens in Illinois: Immigration Consequences Reconsidered*, 53 DePaul L Rev 19, 20 (2003) (summarizing immigration statutes).

[4] We note that petitioner did not offer any evidence that reveals the likelihood that the Attorney General will or will not choose to pursue deportation proceedings—either generally or in particular classes of cases. There is also no evidence whether Oregon reports every alien who is convicted of an aggravated felony to the INS.

counsel should have identified each exception to deportation that might apply to him and that his counsel then should have explained the likelihood that each exception would apply. Alternatively, petitioner argues that his counsel should have given him the more general advice that the Court of Appeals stated: Unless the Attorney General chose not to deport him, he would be deported. Before considering those arguments, we first set out the principles that guide our inquiry.

■ In pleading guilty, a defendant admits in open court that he or she committed the acts charged in the indictment, and that admission forms the basis for determining his or her guilt. *See State v. Harris*, 339 Or 157, 172-73, 118 P3d 236 (2005) (recognizing proposition). Often a defendant pleads guilty as part of a plea bargain; that is, in return for the defendant's admission of guilt on some of or all the charged offenses, the state agrees either to dismiss some of the charges or to recommend a reduced sentence. "For a defendant who sees slight possibility of acquittal, the advantages of pleading guilty and limiting the probable penalty are obvious—his exposure is reduced, the correctional processes can begin immediately, and the practical burdens of a trial are eliminated." *Brady v. United States*, 397 US 742, 752, 90 S Ct 1463, 25 L Ed 2d 747 (1970).

Counsel plays an integral role in guiding his or her client through this process. Of foremost importance is counsel's role in advising his or her client of the likelihood of conviction if the client chooses to go to trial. *See id.* at 756 (recognizing significance of that factor). That consideration often will be pivotal in deciding whether to accept a plea offer with the prospect of a reduced sentence or whether to require the state to prove its case with the attendant risk of a more onerous sanction. Because the potential penalty is also important to an informed plea decision, counsel must advise a defendant of the direct consequences of a criminal conviction—that is, the maximum possible sentence that he or she could receive if convicted, as well as the "possibility of a minimum sentence." *See Hartzog v. Keeney*, 304 Or 57, 64, 742 P2d 600 (1987) (minimum sentence); *cf.* ORS 135.385(2)(b) (maximum sentence); *United States v. Day*, 969 F2d 39, 44 (3d Cir 1992) (recognizing that, for defendant contemplating guilty

plea, knowledge of comparative sentence exposure often will be crucial).

■ A criminal conviction can result in collateral consequences as well as direct ones. A conviction can lead, among other things, to deportation, the loss of a license to practice a profession, the termination of parental rights, and the loss of the right to receive federal benefits. *See* Gabriel J. Chin and Richard W. Holmes, Jr., *Effective Assistance of Counsel and the Consequences of Guilty Pleas*, 87 Cornell L Rev 697, 699-700 (2002). As a general rule, the courts have not required defense counsel to advise their clients of the collateral consequences of a conviction as a matter of providing constitutionally adequate assistance. *Id.* at 700-01. Oregon, however, has joined a minority of states that require, as a matter of state constitutional law, that defense counsel advise clients who are not United States citizens that a criminal conviction "may result" in deportation. *See Lyons*, 298 Or at 557, 567 (so holding); *cf.* ORS 135.385(2)(d) (requiring trial courts to tell noncitizen defendants who plead guilty that "conviction of a crime may result, under the laws of the United States, in deportation, exclusion from admission to the United States or denial of naturalization").

Neither *Lyons* nor ORS 135.385(2)(d) requires counsel or the court to specify the likelihood that a particular defendant will be deported. Rather, both require only that defendants be aware of the maximum consequence—deportation—that can result from a conviction. In that respect, *Lyons* and ORS 135.385(2)(d) are no different from ORS 135.385(2)(b), which requires the courts to advise defendants of the maximum sentence that they can receive, not the likelihood that the court will impose that sentence. Similarly, in *Hartzog*, the court held that, to provide minimally adequate assistance, a defense counsel must advise his or her client of "the *possibility* of a minimum sentence." 304 Or at 64 (emphasis added). In short, the focus has been on the possible consequence of a plea, not an estimate of the likelihood that the consequence will occur.

With that background in mind, we turn to petitioner's arguments. Petitioner correctly observes that, since this court's decision in *Lyons*, changes in federal law have

increased the likelihood of deportation. Congress has expanded the class of crimes that will result in deportation, and it also has narrowed the exceptions previously available to persons subject to deportation. *See Immigration and Naturalization Service v. St. Cyr*, 533 US 289, 294-98, 121 S Ct 2271, 150 L Ed 2d 347 (2001) (describing changes to immigration laws). Petitioner reasons that, in light of those changes, *Lyons* is no longer good law. He argues that defense counsel must do more than advise their clients that a conviction "may result" in deportation. In his view, the state constitution now requires defense counsel to identify each potential exception to deportation that may apply and quantify the likelihood of each exception's application.

The level of specificity that petitioner would impose on defense counsel goes far beyond what this court has required as an incident of constitutionally adequate assistance. As noted, in determining what counsel must tell their clients about the direct consequences of a guilty plea, the courts have held that a defense counsel must advise his or her client of the maximum penalty that the trial court can impose as well as the possibility of a minimum sentence. The court has not held that the Oregon Constitution requires counsel to attempt to specify the likelihood that the trial court might impose either the maximum sentence or a minimum sentence. If the constitution does not require that level of specificity concerning the *direct* consequences of a criminal conviction, we see no constitutional warrant for requiring that level of specificity concerning a *collateral* consequence of a conviction. Petitioner's counsel did not "fai[l] to exercise reasonable skill and judgment" when he advised petitioner of the maximum collateral sanction available—deportation—if he pleaded guilty. *See Lichau v. Baldwin*, 333 Or 350, 359, 39 P3d 851 (2002) (stating standard for inadequate assistance under Article I, section 11, of the Oregon Constitution).[5]

We recognize that it may be better practice for defense counsel to provide, to the extent possible, more specific advice about the likelihood of deportation than petitioner's counsel provided. The question, however, is not

---

[5] Our conclusion also resolves petitioner's argument that his counsel should have provided him with the advice that the Court of Appeals would require.

whether petitioner's defense counsel could have provided better advice. Rather, the question is whether counsel's advice fell below the minimum that the state constitution requires. We cannot say that it did.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.