Argued and submitted February 8, 2012, affirmed March 13, 2013

ALFREDO SALDANA-RAMIREZ,
*Petitioner-Appellant,*

*v.*

STATE OF OREGON,
*Defendant-Respondent.*

Washington County Circuit Court
C094946CV; A145980

298 P3d 59

Brian P. Conry argued the cause and filed the briefs for appellant.

Jeremy C. Rice, Assistant Attorney General, argued the cause for respondent. With him on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Before Duncan, Presiding Judge, and Haselton, Chief Judge, and Rasmussen, Judge pro tempore.

HASELTON, C. J.

**HASELTON, C. J.**

Petitioner appeals from a judgment denying post-conviction relief. ORS 138.530. He asserts that he was denied effective assistance of counsel due to his criminal defense counsel's purported default in failing to inform him of specific immigration-related consequences that could result from pleading guilty to felony failure to appear. *Chaidez v. United States*, No 11-820, 2013 WL 610201 (US Feb 20, 2013), forecloses that claim.[1] Accordingly, we affirm.

In reviewing a claim of ineffective assistance of counsel, we are bound by the post-conviction court's factual findings that are supported by evidence in the record; we make our own determination regarding constitutional issues. *Carias v. State of Oregon*, 148 Or App 540, 542, 941 P2d 571 (1997).

Consistently with that standard, the circumstances material to our review are as follows. Petitioner is not a United States citizen. On January 17, 2000, petitioner was charged with felony fourth-degree assault and misdemeanor fourth-degree assault in relation to an incident involving his girlfriend at that time. On April 25, 2000, he failed to appear on those charges; consequently, the court issued a bench warrant for his arrest. On June 22, 2000, petitioner was indicted for felony failure to appear, ORS 162.205, and on June 30, 2000, a nationwide arrest warrant issued for petitioner on that charge.

On November 25, 2007, police apprehended petitioner during a traffic stop and arrested him on the failure to appear charges. On January 22, 2008, relying on defense counsel's advice, petitioner pleaded guilty and was convicted of felony failure to appear.[2] The plea form stated:

> "I understand that if I am not a citizen of the United States, conviction of a crime may result, under the laws of the United States, in my deportation, exclusion from admission to the United States or denial of naturalization."

---

[1] We reject without published discussion petitioner's other arguments on appeal.

[2] As part of the plea agreement, the state dismissed both the felony fourth-degree assault charge and the misdemeanor fourth-degree assault charge.

On August 20, 2009, within two years of his conviction becoming final, petitioner filed his initial petition for post-conviction relief, asserting that he had been "denied effective and adequate assistance of trial counsel" under both the Oregon and federal constitutions. According to petitioner, "[a] reasonable attorney would have researched the immigration law so as to adequately advise Petitioner regarding the immigration consequences of his plea to Felony Failure to Appear." Petitioner asserted (and continues to assert) that his conviction for felony failure to appear "makes him inadmissible to the United States and as a matter of law unable to apply * * * for Cancellation of Removal."[3]

In March 2010—while this matter was still pending before the post-conviction court—the United States Supreme Court decided *Padilla v. Kentucky*, 559 US 356, 130 S Ct 1473, 176 L Ed 2d 284 (2010). In *Padilla*, the petitioner, who was not a United States citizen, faced deportation after pleading guilty to transporting a large quantity of marijuana—charges for which deportation is "virtually mandatory." *Id.* at ___, 130 S Ct at 1478. Prior to pleading, Padilla's defense counsel not only failed to advise him of the immigration consequences of conviction, but told him that he "did not have to worry about immigration status." *Id.* at ___, 130 S Ct at 1478 (internal quotation marks omitted). Padilla contended that his attorney's default in that regard gave rise to an entitlement to collateral relief under the two-prong standard prescribed in *Strickland v. Washington*, 466 US 668, 104 S Ct 2052, 80 L Ed 2d 674 (1984). That is, that (1) "counsel's representation fell below an objective standard of reasonableness," *id.* at 688, and (2) "there [was] a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694.

The Court determined that the *Strickland* test applies to advice regarding deportation and, applying

---

[3] The Attorney General of the United States "may cancel removal of, and adjust to the status of an alien lawfully admitted for permanent residence, an alien who is inadmissible or deportable from the United States" under certain conditions, which petitioner argues that he might otherwise meet but for his conviction. 8 USC § 1229b.

*Strickland*, the court observed that, "under prevailing professional norms," a criminal defense attorney "must advise her client regarding the risk of deportation." *Padilla*, 559 US at \_\_\_, 130 S Ct at 1482. Specifically, the Court explained:

"In the instant case, the terms of the relevant immigration statute are succinct, clear, and explicit in defining the removal consequence for Padilla's conviction. See 8 U.S.C. § 1227(a)(2)(B)(i) ('Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States or a foreign country relating to a controlled substance * * *, other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable'). Padilla's counsel could have easily determined that his plea would make him eligible for deportation simply from reading the text of the statute, which addresses not some broad classification of crimes but specifically commands removal for all controlled substances convictions except for the most trivial of marijuana possession offenses. Instead, Padilla's counsel provided him false assurance that his conviction would not result in his removal from this country. This is not a hard case in which to find deficiency: The consequences of Padilla's plea could easily be determined from reading the removal statute, his deportation was presumptively mandatory, and his counsel's advice was incorrect.

"Immigration law can be complex, and it is a legal specialty of its own. Some members of the bar who represent clients facing criminal charges, in either state or federal court or both, may not be well versed in it. There will, therefore, undoubtedly be numerous situations in which the deportation consequences of a particular plea are unclear or uncertain. The duty of the private practitioner in such cases is more limited. When the law is not succinct and straightforward * * *, a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences. But when the deportation consequence is truly clear, as it was in this case, the duty to give correct advice is equally clear."

*Id.* at \_\_\_, 130 S Ct at 1483 (footnote omitted). The Court concluded that Padilla had satisfied the first prong of *Strickland* and, accordingly, reversed and remanded for the

post-conviction court to determine whether he had been prejudiced. *Id.* at ___, 130 S Ct at 1483-84.

Following *Padilla*, petitioner here supplemented his submissions in support of post-conviction relief in an effort to demonstrate that his defense counsel had offered him constitutionally inadequate advice under *Padilla*. In a supporting affidavit, criminal defense counsel stated that "I do not remember what I stated directly to [petitioner]" but that "[w]hen going through a plea petition I explain to my clients that I am not an immigration attorney and that all convictions may lead to deportation." She also explained that

"I probably told [petitioner] that for his criminal history that a [failure to appear] is better than a Felony Person crime such as Assault IV, which was the underlying crime for the [failure to appear]. * * * However, I am clear with my clients that any conviction can result in deportation."

Defendant, in response, remonstrated that criminal defense counsel's advice satisfied Oregon state constitutional requirements because defense counsel had informed petitioner that a conviction for failure to appear may result in deportation. *See Gonzalez v. State of Oregon*, 340 Or 452, 458, 134 P3d 955 (2006) (explaining that Oregon law requires that "defense counsel advise clients who are not United States citizens that a criminal conviction 'may result' in deportation" (citing *Lyons v. Pearce*, 298 Or 554, 557, 567, 694 P2d 969 (1985))). Defendant further asserted that criminal defense counsel's advice satisfied *Padilla* because the immigration consequences of petitioner's plea were not "truly clear."

The post-conviction court denied relief. In doing so, the court found, *inter alia*, that "[i]t is more likely than not that trial counsel told petitioner that the failure to appear conviction would almost certainly result in removal." The court continued and concluded that

"[t]his is adequate advice under *Padilla* and *Gonzalez* * * *. Regarding *Padilla*, trial counsel may have given the right advice on incomplete information but she nevertheless did tell petitioner that he could count on being deported, which

was correct. *Padilla* requires trial counsel to advise a client in petitioner's situation that a conviction 'may carry a risk of adverse immigration consequences' where immigration consequences are not clear cut and clearly advise of adverse consequences when the consequences are clear. [559 US at ___, 130 S Ct at 1483.] Trial counsel for petitioner was sufficiently clear in her advice."

On appeal, petitioner reiterates his arguments before the post-conviction court, including his fundamental contention that his criminal defense counsel's failure to inform him of certain potential immigration-related consequences of his plea breached the standard of constitutionally adequate representation as prescribed in *Padilla*. That contention is foreclosed by *Chaidez*.

In *Chaidez*, the petitioner was a lawful permanent resident of the United States whose guilty plea subjected her to mandatory deportation. *Chaidez*, 2013 WL 610201 at *3. After her convictions became final and before the Supreme Court issued *Padilla*, the petitioner filed a petition for a writ of *coram nobis* in federal court, arguing that her criminal defense counsel had provided constitutionally ineffective assistance by failing to advise her of the immigration consequences of a guilty plea. *Id.* While Chaidez's petition was pending, the Supreme Court decided *Padilla*. The district court determined that the rule in *Padilla* applied, that the petitioner's counsel had performed deficiently under *Padilla*, and that the petitioner had been prejudiced as a result. Accordingly, the court vacated the petitioner's convictions.

The United States Court of Appeals for the Seventh Circuit reversed, holding that, under federal retroactivity analysis, as described in *Teague v. Lane*, 489 US 288, 109 S Ct 1060, 103 L Ed 2d 334 (1989), *Padilla* had declared a new constitutional rule of criminal procedure and, thus, did not apply retroactively to the petitioner's collateral challenge. *Chaidez v. United States*, 655 F3d 684 (7th Cir 2011). The Supreme Court granted *certiorari* "to resolve a split among federal and state courts on whether *Padilla* applies retroactively." *Chaidez*, 2013 WL 610201 at *4.

Applying *Teague*, the Court concluded that it had announced a new rule of criminal procedure in *Padilla*. *Id.* at *10. Accordingly, the Court held that *Padilla* does not apply retroactively to convictions already final on direct review. That is, "defendants whose convictions became final prior to *Padilla* * * * cannot benefit from its holding." *Id.*

Here, petitioner's *Padilla*-based post-conviction claim arises in a procedural posture functionally indistinguishable from that in *Chaidez*. Petitioner's conviction became final before *Padilla* issued. Thus, under federal retroactivity principles as elucidated in *Chaidez*, *Padilla* does not apply to petitioner's collateral challenge. "[F]ederal retroactivity principles govern whether a new federal rule applies retroactively in [Oregon] court." *Miller v. Lampert*, 340 Or 1, 7, 125 P3d 1260 (2006) (citing *Page v. Palmateer*, 336 Or 379, 385-86, 84 P3d 133, *cert den*, 543 US 866 (2004)).[4] Accordingly, we affirm.

Affirmed.

---

[4] Petitioner asserts that "*Padilla* has *sub silentio* reversed *Gonzalez*," but does not otherwise make a separate argument under the state constitution. Contrary to petitioner's assertion, the Oregon Supreme Court's holding in *Gonzalez* remains valid, and petitioner failed to demonstrate that defense counsel's advice was constitutionally inadequate under that standard.