No. 28 July 30, 2015 553

# IN THE SUPREME COURT OF THE
## STATE OF OREGON

JOSE ANTONIO GONZALEZ VERDUZCO,
*Petitioner on Review,*

*v.*

STATE OF OREGON,
*Respondent on Review.*

(CC CV110467; CA A153165; SC S062339)

En Banc

On review from the Court of Appeals.*

Argued and submitted March 12, 2015, at the University of Oregon School of Law, Eugene.

Brian Conry, Portland, argued the cause and filed the brief for petitioner on review.

Paul L. Smith, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Lindsey Burrows, Deputy Public Defender, Salem, filed the brief for *amicus curiae* Office of Public Defense Services.

Sara F. Werboff, Janet Hoffman & Associates, Portland, filed the brief for *amici curiae* Oregon Legal Academics and Oregon Justice Resource Center. With her on the brief was Christopher N. Lasch, Denver, Colorado.

Ryan T. O'Connor, Jason Weber, and Jed Peterson, O'Connor Weber LLP, Portland, filed the brief for *amicus curiae* O'Connor Weber LLP.

KISTLER, J.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

_____
\* Appeal from Yamhill County Circuit Court, Ronald W. Stone, Judge. Order of Summary Affirmance, May 6, 2014.

**KISTLER, J.**

In *Danforth v. Minnesota*, 552 US 264, 128 S Ct 1029, 169 L Ed 2d 859 (2008), the United States Supreme Court held that state courts may apply new federal constitutional rules retroactively in state post-conviction proceedings even though those rules do not apply retroactively in federal habeas corpus proceedings. We allowed review in this case to consider the principles that Oregon courts should follow in exercising the authority that *Danforth* recognized. However, after considering the parties' arguments, we conclude that the state statutory rule against successive petitions bars the grounds for relief that petitioner has raised in his second post-conviction petition. We accordingly affirm the Court of Appeals decision and the post-conviction court's judgment on that ground.

## I. FACTS AND PROCEDURAL HISTORY

Petitioner is a citizen of Mexico and, until 2006, was a permanent legal resident of this country.[1] In 2003, the state charged him with possession and distribution of a controlled substance after police officers found him in possession of five pounds of marijuana. For a person in petitioner's circumstances, the presumptive sentence on the distribution charge was 19 to 20 months in prison. Petitioner explained to his defense counsel that his primary goal was to avoid serving time in prison so that he could continue his job and education.

Given the likelihood of conviction and petitioner's stated goal of avoiding prison time, his defense counsel negotiated a plea deal with the prosecutor, which the trial court tentatively approved. Pursuant to that deal, petitioner agreed to plead guilty to distribution of a controlled substance, and the state agreed to dismiss the possession charge and recommend probation. In discussing the case

---

[1] Attached to petitioner's second post-conviction petition are various documents from the hearing on his first post-conviction petition, including the post-conviction court's opinion denying his first petition for post-conviction relief. We take the facts from the allegations in the second petition and the attachments to that petition. We state disputed historical facts consistently with the post-conviction courts' opinions resolving petitioner's first and second post-conviction petitions.

with petitioner, his defense counsel told him, as she told all her clients who were not United States citizens, that "the Federal Government can do whatever [it] wants to do and so [you] need to understand that [you] could be deported" as a result of pleading guilty. She later characterized her advice "as something more than 'may' be deported, but something less than 'will' be deported" as a result of a guilty plea.

In 2003, petitioner accepted the plea deal and pleaded guilty to distribution of a controlled substance. The state dismissed the possession charge, and the trial court sentenced petitioner to probation. The plea petition that petitioner signed stated: "I understand that a criminal conviction of a person who is not a United States citizen may result in deportation, exclusion from admission to the United States or denial of naturalization." Petitioner did not file a direct appeal after the trial court sentenced him on January 26, 2004, and his conviction became final when the judgment of conviction was entered on the register the next day. *See* ORS 138.510(3)(a) (defining when an unappealed conviction will be final for purposes of the state postconviction act).

After petitioner's conviction became final, Immigration and Customs Enforcement (ICE) did not seek to remove petitioner from this country and return him to Mexico, even though he had pleaded guilty to an "aggravated felony" for the purposes of federal immigration law.[2] Rather, petitioner continued to live and work in this country until 2005, when he went on a personal trip to Mexico. When petitioner attempted to return to this country, federal immigration officials detained him at the border and then admitted him in January 2006 for a "deferred inspection" so that they could determine the effect of his state conviction.

---

[2] Under federal law, a person is deportable if he or she has been convicted of an aggravated felony. 8 USC § 1227(a)(2)A)(iii). A state conviction for delivery of a controlled substance is an aggravated felony for the purposes of the federal immigration laws. *See* 8 USC § 1101(a)(43)(B) (defining an aggravated felony as, among other crimes, "illicit trafficking in a controlled substance *** including a drug trafficking crime ***"). *See also Batrez Gradiz v. Gonzales*, 490 F3d 1206, 1210 (10th Cir 2007) (observing that a drug crime constitutes an aggravated felony if it is analogous to a felony under the federal Controlled Substances Act); 21 USC §§ 841(a)-(b) (making it a felony to deliver a controlled substance).

On January 24, 2006, slightly less than two years after his state conviction became final, petitioner filed a timely petition for post-conviction relief. *See* ORS 138.510(3) (post-conviction petitions must be filed within two years after the challenged conviction becomes final). Petitioner alleged that his counsel had provided him with inadequate assistance, in violation of the state and federal constitutions, when she failed to tell him that distribution of a controlled substance was an "aggravated felony" for the purposes of federal immigration law and that, "if [he] came to the attention of the Immigration authorities at any time, \*\*\* it was certain he would be deported as it is required by the Immigration and Nationality [*sic*] Act that aggravated felons be deported." He also alleged that his counsel failed to tell him that persons who commit aggravated felonies are barred from reentering the United States. Finally, he alleged that his plea was not knowing because the trial court had not informed him of those consequences before it accepted his plea.

After holding a hearing on petitioner's first post-conviction petition, the post-conviction court ruled that his counsel's advice about the immigration consequences of his guilty plea satisfied state constitutional standards. *See Gonzalez v. State of Oregon*, 340 Or 452, 459, 134 P3d 955 (2006) (under Article I, section 11, it is sufficient to advise clients that a state conviction "may result" in deportation); *Lyons v. Pearce*, 298 Or 554, 567, 694 P2d 969 (1985) (same). The post-conviction court observed that the use of the word "may" in the plea petition had, in fact, proved accurate because ICE had not removed petitioner after he pleaded guilty. Rather, petitioner had remained in this country and returned to work and school for almost two years. It was only after petitioner left the country in 2005 and then attempted to reenter the country that ICE denied him unconditional reentry.

Before the post-conviction court, petitioner argued that, even if his counsel's advice had satisfied state constitutional standards, it did not satisfy federal standards. Relying on *United States v. Kwan*, 407 F3d 1005 (9th Cir 2005), he argued that his counsel's advice had fallen below the standard that the Sixth Amendment requires because his counsel had not advised him that "he had [pleaded] guilty to an offense that would almost certainly cause him

to be deported." The post-conviction court disagreed, reasoning that *Kwan* was limited to instances where counsel had responded to a client's questions, purported to have expertise, and had affirmatively misled the client.

The post-conviction court denied petitioner's first post-conviction petition on June 5, 2006. The Oregon Court of Appeals affirmed the post-conviction court's judgment on March 19, 2008, and this court denied his petition for review on November 26, 2008. Petitioner did not file a petition for *certiorari* with the United States Supreme Court.

While petitioner's post-conviction case was making its way through the Oregon courts, the Kentucky courts were considering a similar post-conviction petition. *See Commonwealth v. Padilla*, 253 SW3d 482 (Ky 2008). In the Kentucky case, Padilla alleged that his counsel had provided inadequate assistance in violation of the Sixth Amendment when he advised Padilla that, if Padilla pleaded guilty to trafficking in more than five pounds of marijuana, he "'did not have to worry about [his] immigration status since he had been in th[is] country so long.'" *Id.* at 483 (quoting counsel's advice). The Kentucky Supreme Court rejected Padilla's Sixth Amendment claim. It held that the Sixth Amendment requires counsel to advise clients only of the direct consequences of their pleas. The Kentucky Supreme Court held that, because the effect of Padilla's conviction on his federal immigration status was a collateral, not a direct, consequence of his plea, the Sixth Amendment did not require Padilla's counsel either to address that issue at all or, if counsel did address it, give Padilla accurate advice. *Id.* at 485.

Padilla filed a petition for a writ of *certiorari* with the United States Supreme Court on November 14, 2008. The Court asked the State of Kentucky for a response on December 18, 2008, and it granted Padilla's petition on February 23, 2009. *Padilla v. Kentucky*, 555 US 1169, 129 S Ct 1317, 173 L Ed 2d 582 (2009).[3] In March 2010, the Court

---

[3] When the Court granted Padilla's petition for *certiorari*, petitioner still had time either to file a petition for *certiorari* in his case or to seek an extension of time in which to do so. *See* Sup Ct R 13(1) (a petition for a writ of *certiorari* may be filed within 90 days of the date that a state supreme court denies discretionary review).

reversed the judgment of the Kentucky Supreme Court and remanded the case for further proceedings. *Padilla v. Kentucky*, 559 US 356, 130 S Ct 1473, 176 L Ed 2d 284 (2010). The Court explained that, in the 1990s, Congress had eliminated a sentencing court's ability to make a binding recommendation that a person not be removed from this country as a result of his or her conviction. *Id.* at 363. Later, in 1996, Congress eliminated most of the Attorney General's authority to grant discretionary relief from removal. *See id.* at 363-64 (explaining that only remnants of that discretion remained). It followed, the Court concluded, that, for persons whose convictions fall within a class of federally defined "aggravated felonies," removal is now "practically inevitable." *Id.* at 364.

In considering whether the Sixth Amendment requires defense counsel to advise their clients of the immigration consequences of a plea, the Court recognized that Kentucky was "far from alone" in holding that the Sixth Amendment requires counsel to advise their clients of the direct consequences of a guilty plea but not the collateral consequences. *Id.* at 365 and n 9. The Court explained, however, that it had "never applied a distinction between direct and collateral consequences to define the scope of constitutionally 'reasonable professional assistance.'" *Id.* at 365. And, it found that, because of the unique nature of removal, there was no need to consider that distinction in deciding Padilla's case. *Id.* Rather, considering the close relationship between criminal convictions and removal, the significant consequences to persons who are removed, and the "weight of prevailing professional" opinion, which was that defense counsel should advise their clients of the risk of removal, the Court held that, "when the deportation consequence is truly clear, as it was in this case, the duty to give correct advice is equally clear," and the breach of that duty violates the Sixth Amendment. *Id.* at 366-67, 369.

In 2011, petitioner filed a second petition for post-conviction relief. He alleged that ICE had removed him from the country in July 2006. He also alleged that, as a result of the Court's 2010 decision in *Padilla*, he was entitled to bring a second or successive petition. On the merits of his claims, he alleged essentially the same two grounds for relief that he

had alleged in his first post-conviction petition: (1) his trial counsel had provided inadequate assistance under Article I, section 11, and the Sixth Amendment when she failed to advise him accurately of the immigration consequences of his plea; and (2) his plea was not knowing, in violation of Due Process, because the trial court had not accurately advised him of the immigration consequences of his plea.

The post-conviction court denied petitioner's second post-conviction petition, reasoning that, under state law, the petition was both successive and time-barred. The court recognized that escape clauses exist for both state procedural bars, but it reasoned that the second petition for post-conviction relief did not come within either escape clause because the grounds for relief that petitioner alleged in his second petition reasonably could have been raised (and had in fact been raised) in petitioner's first post-conviction petition.

Petitioner appealed. On appeal, the state identified an additional procedural hurdle. It noted that, after the post-conviction court had entered its judgment, the United States Supreme Court held that *Padilla* does not apply retroactively to cases that became final before the date of that decision. *See Chaidez v. United States*, 568 US ___, 133 S Ct 1103, 185 L Ed 2d 149 (2013) (so holding). The state also noted that the Oregon Court of Appeals had held that it would follow federal retroactivity analysis and would not apply *Padilla* retroactively in state post-conviction proceedings. *See Saldana-Ramirez v. State of Oregon*, 255 Or App 602, 298 P3d 59, *rev den*, 354 Or 148 (2013) (so holding).[4] Defendant responded that, under *Danforth*, state courts are free to apply *Padilla* retroactively in post-conviction proceedings even though *Chaidez* had held that *Padilla* does not apply retroactively on federal habeas. Following its decision in *Saldana-Ramirez*, the Court of Appeals issued an order summarily affirming the post-conviction court's judgment.

_____

[4] In *Saldana-Ramirez*, the Court of Appeals noted that this court's decisions before *Danforth* had followed federal retroactivity analysis, and the Court of Appeals signaled that it would do so too until we exercised our authority under *Danforth* to take a different course. *See* 255 Or App at 608; *see also Frias v. Coursey*, 229 Or App 716, 215 P3d 874 (2009).

## II.   ISSUES

Before turning to the various arguments that the parties advance on review, it is helpful to identify the three issues those arguments address. Petitioner seeks to bring a collateral challenge to his 2004 state conviction based on the 2010 decision in *Padilla*. In doing so, he faces three potential obstacles. The first two derive from the state post-conviction act. That act provides that post-conviction petitions must be filed within two years after the challenged conviction becomes final, ORS 138.510(3),[5] and it also bars successive petitions, ORS 138.550(3). In this case, petitioner's second post-conviction petition was filed in 2011, more than seven years after his conviction for distribution became final in 2004. Moreover, because this is petitioner's second petition, it is, by definition, successive.

Both procedural bars, however, contain identically worded "escape clauses." Essentially, if petitioner could not reasonably have raised the grounds for relief alleged in his second petition either in a timely fashion or in the first petition, then those state procedural bars do not prevent petitioner from pursuing the grounds for relief alleged in his second post-conviction petition. On that issue, petitioner's argument reduces to the proposition that he could not have raised his current claims for relief until after the Court announced its decision in *Padilla*. It follows, he concludes, that that change in the law brings his claim within both escape clauses.

Even if petitioner passes those first two hurdles, he still faces a third. Not all changes in the law apply retroactively. Indeed, under federal law, a "new rule" will not apply retroactively to convictions that have become final unless the new rule is: (1) a "watershed rule" of criminal procedure or (2) a rule placing "conduct beyond the power of government to proscribe." *Teague v. Lane*, 489 US 288, 311, 109 S Ct 1060, 103 L Ed 2d 334 (1989) (plurality) (quoting

---

[5] When a conviction becomes final for the purposes of the post-conviction act will vary depending on whether a defendant files an appeal in state court or a petition for *certiorari*. ORS 138.510(3)(a)-(c). Because petitioner did not file a direct appeal, his conviction became final on the date the judgment of conviction was entered in the register. ORS 138.510(3)(a).

*Mackey v. United States*, 401 US 667, 91 S Ct 1160, 28 L Ed 404 (1971) (Harlan, J., concurring in the judgments in part and dissenting in part); *see [Miller v. Lampert](#)*, 340 Or 1, 125 P3d 1260 (2006) (discussing watershed rules of criminal procedure).[6] Ordinarily, under federal law, new rules will apply only prospectively or to convictions that have not yet become final. *Teague*, 489 US at 310. And, as noted above, the Court held in *Chaidez* that *Padilla* announced a "new rule" that does not apply retroactively to convictions, such as petitioner's, that became final before *Padilla* was decided.[7]

That is not the end of the analysis, however. As noted, the United States Supreme Court held in *Danforth* that states may apply new federal rules retroactively in state post-conviction proceedings even though those rules would not apply retroactively in federal habeas. Essentially, the Court held in *Danforth* that federal retroactivity analysis does not define the scope of the federal right. 552 US at 275. Indeed, in *Danforth*, the Court described the federal retroactivity analysis that it had announced in *Teague* as an interpretation of the federal habeas statute. *Id.* at 278.

After *Danforth*, each state is free to determine when new federal rules should be applied retroactively in state post-conviction proceedings. Such determinations can include a consideration of the state's interest in the finality of convictions, the effect of the new federal right on the validity of the conviction, the need for predictable retroactivity rules, and the value of additional review. *See* Paul M. Bator, *Finality in Criminal Law and Habeas Corpus for State Prisoners*, 76 Harv L Rev 441 (1963) (discussing considerations that

---

[6] For federal purposes, a "case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Teague*, 489 US at 301 (emphasis in original). Conversely, a case does not announce a new rule when "it '[is] merely an application of the principle that governed'" a prior decision to a new set of facts. *Id.* at 307.

[7] In holding that *Padilla* announced a new rule, the Court explained in *Chaidez* that *Padilla* was not simply applying the general standard of reasonable assistance to a new set of facts. *Chaidez*, 133 S Ct at 1108. Rather, *Padilla* held, for the first time, that the Sixth Amendment requires a lawyer to advise his or her client about something other than the direct consequence of a criminal conviction. *Id.* at 1110. As a matter of federal law, *Padilla* established a new rule—namely, a rule that was not dictated by the precedent that existed at the time of Chaidez's conviction.

can inform when courts should revisit final convictions); *cf. Danforth*, 552 US at 273-74 (explaining that the current federal rule was adopted, among other things, to ensure predictable results). Even though we allowed review to consider when new federal rules will apply retroactively in Oregon, we conclude that this case does not provide an occasion to decide that issue. Rather, the state statutory limits on post-conviction petitions resolve petitioner's claims. We accordingly turn to those statutory limits.

## III.  STATE PROCEDURAL BARS

Oregon's post-conviction act has prohibited successive petitions since it was first enacted in 1959. Or Laws 1959, ch 636, § 15(3). Section 15(3) of the 1959 act required that

> "all grounds [for relief] must be asserted in [the] original or amended petition, and any grounds not so asserted are deemed waived unless the court on hearing a subsequent petition finds grounds for relief asserted therein which could not reasonably have been raised in the original or amended petition."

*See* ORS 138.550(3) (codifying section 15(3)). Section 15(2) of the 1959 act contained a similar procedural bar. It provided that, when a petitioner had "sought and obtained direct appellate review of [a] conviction and sentence," no ground for relief could be asserted in a post-conviction petition "unless such ground was not asserted and could not reasonably have been asserted in the direct appellate review proceeding." *See* ORS 138.550(2) (codifying section 15(2)).[8]

Thirty years later, the legislature added another procedural bar. In 1989, the legislature provided that a petition for post-conviction relief "must be filed within 120 days" of the date that the challenged conviction became final "unless the court on hearing a subsequent petition finds grounds for relief asserted which could not reasonably have been raised in the original or amended petition."

---

[8] That limitation contains a qualification. If the petitioner was not represented by counsel on direct appeal due to lack of funds, then only those grounds for relief that had been specifically decided on appeal are barred from being asserted on post-conviction. *See* ORS 138.550(2).

Or Laws 1989, ch 1053, § 18.[9] Four years after that, the court expanded the time for filing a petition from 120 days to two years. Or Laws 1993, ch 517, § 1; *see* ORS 138.510(3) (now codifying the two-year statute of limitations).[10]

Both ORS 138.550(3) and ORS 138.510(3) contain identically worded "escape clauses." A petition will not be untimely or successive if the grounds alleged in the petition "could not reasonably have been raised" earlier. In this case, there is no dispute that petitioner filed his second post-conviction more than two years after his 2004 conviction became final, nor is there any dispute that his second petition is successive. Rather, the dispute is whether the grounds for relief asserted in petitioner's second post-conviction petition "could not reasonably have been raised" earlier. More specifically, the question is whether petitioner could not reasonably have asserted the grounds for relief in his second post-conviction petition until after the United States Supreme Court issued its decision in *Padilla* in 2010.

In analyzing the two escape clauses, we start with the prohibition against successive petitions and consider it separately from the prohibition against untimely petitions. Although both clauses are worded identically, one was enacted in 1959 while the other was enacted in 1989 and modified in 1993. The contexts that preceded the two clauses differ, as do their legislative histories. We cannot assume, as the parties do, that the decision in *Bartz v. State of Oregon*, 314 Or 353, 839 P2d 217 (1992), which relied on the 1989 legislative history of ORS 138.510(3) to interpret the escape clause in that statute, necessarily governs

---

[9] The 1989 legislature borrowed the escape clause from the bar against successive petitions and inserted it, without modification, in the bar against untimely petitions. Read literally, the escape clause that the 1989 legislature borrowed does not fit easily with the prohibition against untimely petitions. However, this court resolved any tension in the limitations statute when it explained in *Bartz v. State of Oregon*, 314 Or 353, 358, 839 P2d 217 (1992), that "the exception in ORS 138.510[(3)] does not require the filing of a timely 'original or amended' petition as a prerequisite to the filing of an untimely petition."

[10] Although the 1993 legislature left the wording of the escape clause unchanged, the legislature discussed the relationship between the escape clause and the expanded limitations period at some length in the course of enacting the 1993 amendments to the statute of limitations. *See, e.g.*, Tape Recording, House Committee on the Judiciary, Subcommittee on Crimes and Corrections, Apr 7, 1993, Tape 70, Side A.

the interpretation of the escape clause in ORS 138.550(3), which was enacted 30 years earlier. Moreover, because the 1993 legislature discussed the escape clause at some length in deciding whether to extend the period of limitation, we also cannot assume that *Bartz* provides the final answer on the meaning of ORS 138.510(3), as amended in 1993. *See State v. Ofodrinwa*, 353 Or 507, 530, 300 P3d 154 (2013) (recognizing that the same phrase can have different meanings depending on differences in context and legislative history).

We accordingly turn to the text of ORS 138.550. The texts of ORS 138.550(2) and (3) express a complete thought. If a petitioner has appealed from a judgment of conviction and if the petitioner could have raised a ground for relief on direct appeal, then the petitioner cannot raise that ground for relief in a post-conviction petition "unless such ground was not asserted and could not reasonably have been asserted in the direct appellate review proceeding." ORS 138.550(2). Additionally, all grounds for relief must be raised in the original or amended petition for post-conviction relief unless the post-conviction court "on hearing a subsequent petition finds grounds for relief asserted therein which could not reasonably have been raised in the original or amended petition." ORS 138.550(3). Read together, those two statutory provisions express the legislature's determination that, when a petitioner has appealed and also has filed a post-conviction petition, the petitioner must raise all grounds for relief that reasonably could be asserted. *See Johnson v. Premo*, 355 Or 866, 874-75, 333 P3d 288 (2014) (explaining that ORS 138.550(3) codifies claim preclusion principles). The failure to do so will bar a petitioner from later raising an omitted ground for relief. *Id*.

We also note, as an initial matter, that ORS 138.550(3) provides that all grounds for relief be must asserted in the original or amended petition "unless" the post-conviction court finds that they could not have been raised earlier. That phrasing places the burden on the petitioner to show that an omitted ground for relief comes within the escape clause. *See Cain v. Gladden*, 247 Or 462, 464, 430 P2d 1015 (1967) (sustaining a demurrer to a post-conviction petition because the petitioner had neither alleged nor

shown that a new ground for relief asserted in a subsequent petition could not reasonably have been raised in the original or amended petition).

Turning to the specific wording of the escape clause, we note that the legislature's use of the word "could" in ORS 138.550(3) "connotes capability, as opposed to obligation." *See OR-OSHA v. CBI Services, Inc.*, 356 Or 577, 589, 341 P3d 701 (2014) (considering a similar verb phrase). That is, the word "could" asks whether a petitioner was "capable of" raising the ground for relief in the first petition that later was raised in a second petition. *See id.* To be sure, the adverb "reasonably" modifies the phrase, "could * * * have raised." As a result of that adverb, the question under ORS 138.550(3) is not whether a petitioner conceivably could have raised the grounds for relief in an earlier petition. Rather, the question is whether the petitioner reasonably could have raised those grounds for relief earlier, a question that calls for a judgment about what was "reasonable" under the circumstances. *See id.* at 591 (phrase "reasonable diligence" requires a "value judgment about what is 'reasonable' and what is 'diligence' under the circumstances of each case").

The context provides some insight into what the use of the word "reasonably" means, most notably this court's cases interpreting ORS 138.550(2) and (3). In many of those cases, the petitioners alleged that they could not reasonably have raised a ground for relief earlier because those grounds depended on newly discovered facts. *See, e.g.*, *Cain*, 247 Or at 464; *Freeman v. Gladden*, 236 Or 137, 139, 387 P2d 360 (1963). And the question whether those new grounds for relief came within the escape clause in ORS 138.550(2) or (3) turned on whether the petitioners persuaded the post-conviction court that the facts on which their new grounds for relief depended could not reasonably have been discovered sooner.

In two cases, this court considered a claim that the petitioner could not reasonably have raised a ground for relief earlier because of changes in the law. *See North v. Cupp*, 254 Or 451, 461 P2d 271 (1969); *Haynes v. Cupp*, 253 Or 566, 456 P2d 490 (1969), *overruled on other grounds*,

*State v. Evans*, 258 Or 437, 442, 483 P2d 1300 (1971).[11] This court held in *North* that the petitioner reasonably could have raised his Fourth Amendment claim earlier but reached a different conclusion in *Haynes* regarding the petitioner's Sixth Amendment claim. We begin with *North*, which presented a relatively straightforward issue. We then turn to *Haynes*, which involved a more complex determination.

In *North*, the petitioner alleged that officers had searched his car in violation of the Fourth Amendment, but he had not raised that issue on direct appeal. This court held that ORS 138.550(2) barred his claim because he reasonably could have raised the issue earlier. The Fourth Amendment claim was fairly obvious. Officers had searched the petitioner's car without a warrant six days after they arrested him, and they found evidence in his car that later was admitted against him in his criminal trial. 254 Or at 453-54. As the court observed, there "was nothing obscure about the law" that would have prevented the petitioner from raising the Fourth Amendment issue on direct appeal. *Id.* at 458. The United States Supreme Court had held a year and a half earlier in *Mapp v. Ohio*, 367 US 643, 81 S Ct 1684, 6 L Ed 2d 1081 (1961), that the Fourth Amendment applied to the states, and the challenged search was a garden variety Fourth Amendment violation. *Id.*[12]

*Haynes* involved a more complex issue. The petitioner in *Haynes* alleged that police officers had interrogated him without informing him of his right to remain silent and his right to counsel in violation of *Escobedo v. Illinois*, 378 US 478, 84 S Ct 1758, 12 L Ed 2d 977 (1964). *Haynes*, 253 Or at 568. The state responded, among other things, that ORS 138.550(2) barred the petitioner from raising that ground for relief in post-conviction because he reasonably could

---

[11] In *Evans*, this court followed the retroactivity rule that the federal courts recently had applied to *Escobedo v. Illinois*, 378 US 478, 84 S Ct 1758, 12 L Ed 2d 977 (1964), and *Miranda v. Arizona*, 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694 (1966). *See Evans*, 258 Or at 442. In doing so, it overruled *Haynes* to the extent that this court had applied a different retroactivity rule to the petitioner's *Escobedo* claim in that case. *Id.*

[12] *North* is notable, not for the holding discussed above, but for its conclusion that Oregon's post-conviction statutes do not permit a petitioner to raise an issue on post-conviction that the petitioner reasonably could have raised on direct appeal if he or she had made a contemporaneous objection below.

have raised it on direct appeal. *Id.* at 570. As this court explained in *Haynes*, the petitioner's trial and direct appeal had occurred during a period when the substantive and procedural rules governing confessions were undergoing a seismic shift.

Regarding substantive rules, the United States Supreme Court decided *Escobedo* as the petitioner was briefing his direct appeal and held that, when several conditions combined, the Sixth Amendment required officers to advise custodial suspects of the right to remain silent before questioning them.[13] *See Haynes*, 253 Or at 570. Several months after the petitioner's direct appeal ended, this court issued an opinion in which it extended *Escobedo* by converting what had been a condition in *Escobedo* for the Sixth Amendment to attach into additional information that officers must tell custodial suspects. *See id.* (discussing *State v. Neely*, 239 Or 487, 398 P2d 482 (1965) (on reconsideration)).[14]

Regarding procedural rules, this court issued procedural rulings in three other cases after it decided Haynes' appeal that, if they had been available, would have permitted Haynes to challenge his confession under *Escobedo* and *Neely*.[15] First, this court held that *Escobedo* applied to all cases that were "being tried or upon direct appeal" when *Escobedo* was decided. *State v. Clifton*, 240 Or 378, 380, 401 P2d 697 (1965). Second, the court held that *Neely*'s later extension of *Escobedo* "related back" to *Escobedo* and applied to cases pending on direct appeal when *Escobedo*

---

[13] *Escobedo* held that, when a person has become the focal suspect, been taken into police custody, and been questioned by the police and when the person has asked for and been denied counsel, the Sixth Amendment right to counsel attaches and requires that the person be told of the "absolute constitutional right to remain silent." 378 US at 490-91. The failure to do so meant that the person's statements could not be used against him or her. *Id.*

[14] In *Neely*, this court held on reconsideration that a suspect need not ask for and be denied counsel to be entitled to the Sixth Amendment right recognized in *Escobedo*. 239 Or at 503-04. Rather, the Sixth Amendment requires officers to advise persons who are focal suspects that they have a right to counsel before questioning them. *Id. Neely* thus converted what had been in *Escobedo* a condition for a defendant's Sixth Amendment right to attach before trial into a requirement that a defendant be advised of the right to counsel.

[15] This court heard oral argument on petitioner's direct appeal on November 5, 1964, and issued its opinion 13 days later on November 18, 1964. *State v. Haynes*, 239 Or 132, 396 P2d 694 (1964).

was decided. *Elliott v. Gladden*, 244 Or 134, 411 P2d 287 (1966). Third, the court held that, if the defendant's criminal trial had ended before the Court decided *Escobedo*, the defendant could argue on direct appeal that his or her confession had been admitted in violation of *Escobedo* without having raised that objection at trial. *Clifton*, 240 Or at 379.

Having chronicled those substantive and procedural shifts, this court rejected in one sentence the argument that the petitioner reasonably could have raised his claim under *Escobedo* and *Neely* on direct appeal. It stated: "Under these circumstances we hold that the petitioner could not have reasonably asserted this ground [that the police obtained his confession without advising him of his right to remain silent and his right to counsel in violation of *Escobedo* and *Neely*] upon direct appeal." *Haynes*, 253 Or at 571. As the court's use of the phrase "these circumstances" suggests, its holding turns on the combination of procedural and substantive changes that the court had identified in *Haynes* and that we have discussed above.

*North* and *Haynes* are relevant because they mark two points on the spectrum where this court held that a ground for relief reasonably could and could not have been raised. *North* involved the application of settled principles to a new set of facts and tells us little about when counsel reasonably should have anticipated a ground for relief that had not yet been definitively resolved. *Haynes* is closer to the mark in that the petitioner's counsel in that case perhaps reasonably could have raised some of the federal substantive and state procedural issues that were being decided either during the direct appeal in that case or after it ended. However, as we read the court's holding, it was the combination of those procedural and substantive changes that persuaded the court that the petitioner in *Haynes* reasonably could not have raised his claim under *Escobedo* and *Neely* on direct appeal. Because of the combination and complexity of those changes, the value that *Haynes* provides in deciding other cases is limited.

In addition to a statute's context, we also consider its legislative history. The legislative hearings that led to the enactment of the 1959 post-conviction act do not address

this issue, nor does the commentary to the uniform act on which Oregon's post-conviction act was modeled. *See* Uniform Post-Conviction Procedure Act (Uniform Act), § 8 comment (1955).[16] Contemporaneous scholarly commentary, however, sheds more light on the meaning of ORS 138.550(3). Two lawyers who participated in drafting the bill that became Oregon's post-conviction act wrote a law review article shortly after the act was adopted. *See* Jack G. Collins and Carl R. Neil, *The Oregon Postconviction-Hearing Act*, 39 Or L Rev 337 (1960). The court repeatedly has looked to their article in seeking to understand the 1959 post-conviction act. *See Johnson*, 355 Or at 874-75 (looking to Collins and Neil's article to determine the context for the post-conviction act); *Benson v. Gladden*, 242 Or 132, 135, 407 P2d 634 (1965) (relying on their article to interpret the post-conviction act).

Collins and Neil recognize, as this court's cases have, that a change in the law can be sufficiently novel or unexpected that a claim based on that change can come within the escape clauses in ORS 138.550(2) and (3). They also recognize, however, that whether an issue reasonably could have been raised does not necessarily depend on whether the issue had been definitively resolved by the courts. In explaining how the escape clause in ORS 138.550(3) would work, Collins and Neil set out the following hypothetical: A petitioner was convicted in state court of a crime based on evidence obtained in violation of the federal constitution. *Id.* at 358. At the time of the criminal trial, the Fourteenth Amendment did not prohibit the use of that evidence in a state prosecution. *Id.* Two years later, the Supreme Court reversed its position and held that using that evidence in a state criminal trial violated the Fourteenth Amendment. *Id.* at 358-59.

Collins and Neil explain that, if a petitioner filed a post-conviction petition before the United States Supreme

---

[16] Section 15(3) of the Oregon post-conviction act is taken essentially verbatim from section 8 of the Uniform Act. *Compare* Or Laws 1959, ch 636, § 15(3), *with* Uniform Act § 8 (1955); *see Datt v. Hill*, 347 Or 672, 682-83, 227 P3d 714 (2010) (looking to the Uniform Act as legislative history). The comment to section 8 of the Uniform Act merely restates the act's text and thus sheds little light on its meaning. *See* Uniform Act, § 8 comment.

Court changed its position, litigated the federal issue in post-conviction, and lost, ORS 138.550(3) would bar him from relitigating that ground for relief in a second post-conviction petition. *Id.* at 359. However, if the petitioner had filed a post-conviction petition before the Court changed its position and litigated other issues, the petitioner would be barred from filing a second post-conviction petition based on the Court's change of position "only if the unconstitutionality of the conviction is deemed a ground for relief which [the petitioner] could not 'reasonably' have raised in his first conviction petition." *Id.* Under their explanation, the Court's 2010 decision in *Padilla* would not permit petitioner to take advantage of the escape clause in ORS 138.550(3) because petitioner alleged that ground for relief in his first post-conviction petition, litigated it, and lost.

Considering the text, context, and history of ORS 138.550, we conclude, as the Court of Appeals did in *Long v. Armenakis*, 166 Or App 94, 97, 999 P2d 461 (2000), that "whether an issue reasonably could be anticipated and raised does not depend—at least not in a *per se* way—on whether the issue has been definitively resolved by the courts." Rather, the question whether a claim reasonably could have been raised earlier will vary with the facts and circumstances of each claim. As the Court of Appeals explained in *Long*:

> "The touchstone is not whether a particular question is *settled*, but whether it reasonably is to be *anticipated* so that it can be raised and settled accordingly. The more settled and familiar a constitutional or other principle on which a claim is based, the more likely the claim reasonably should have been anticipated and raised. Conversely, if the constitutional principle is a new one, or if its extension to a particular statute, circumstance, or setting is novel, unprecedented, or surprising, then the more likely the conclusion that the claim reasonably could not have been raised."

*Id.* at 101 (emphasis in original; citations omitted). We cannot improve on the Court of Appeals' summary of those general principles and adopt its summary as our own.[17]

---

[17] In *Long*, the Court of Appeals was construing ORS 138.510(3). However, we conclude that its summary of when a claim reasonably can be raised captures the meaning drawn from the text, context, and history of ORS 138.550(3).

With those principles in mind, we turn to the grounds for relief that petitioner has alleged in his second petition for post-conviction relief. As noted, petitioner alleges that his trial counsel's advice violated the Sixth Amendment because she failed to advise him that, if he pleaded guilty to distribution of a controlled substance, it was virtually inevitable that he would be removed. He also alleges that his plea was not knowing, and therefore violated the Due Process Clause, because the trial court did not give him the same advice before accepting his guilty plea.[18]

Were it not for one fact, it might be a close call whether petitioner reasonably could have raised those two grounds for relief in his first post-conviction petition. As the United States Supreme Court recognized in *Padilla*, Kentucky was "far from alone" in holding in 2008 that the effect of a state conviction on a defendant's immigration status was a collateral consequence of a guilty plea that did not implicate the Sixth Amendment. *Padilla*, 559 US at 365. That is, it is fair to describe the distinction that Kentucky drew between collateral and direct consequences of a conviction as the majority view among the lower courts. *See Chaidez*, 133 S Ct at 1109 (discussing cases).

There was, of course, countervailing authority. As the Court explained in *Padilla*, it had "never applied a distinction between direct and collateral consequences to define the scope of constitutionally 'reasonable professional assistance' required under *Strickland*[.]" 559 US at 365. Not only was the Sixth Amendment issue thus an open one, but federal courts of appeals had recognized for 20 years before petitioner filed his first post-conviction petition that failing to ask for a binding recommendation from a sentencing court that the defendant not be removed violated the Sixth Amendment. *Id.* at 362-63; *see United States v. Castro*, 26 F3d 557 (5th Cir 1994); *Janvier v. United States*, 793 F2d

---

[18] Petitioner's argument assumes that his second ground for relief follows from *Padilla*. We note, however, that a trial court's Fourteenth Amendment obligation to ensure that a defendant's guilty plea is knowing is not necessarily coextensive with his counsel's Sixth Amendment obligation to provide constitutionally adequate assistance. Given our holding that ORS 138.550(3) bars the grounds for relief alleged in petitioner's second post-conviction petition, we need not decide the extent to which those two claims differ.

449 (2d Cir 1986).[19] Similarly, as the Court observed, "the weight of prevailing professional norms supports the view that counsel must advise her client regarding the risk of deportation." *Id.* at 367 (citing law review articles, treatises, and professional guidelines that predated 2006).

We need not decide whether, given that conflicting authority, petitioner reasonably could have raised the constitutional claims in his first post-conviction petition that he now raises in his second post-conviction petition. The fact is that, in this case, he did. Having raised those grounds for relief in his first post-conviction petition, he cannot claim that he could not reasonably have raised them. ORS 138.550(3); *see* Collins and Neil, *The Oregon Postconviction-Hearing Act*, 39 Or L Rev at 359. As we understand petitioner's contrary argument, it reduces to the proposition that he could not reasonably have raised those grounds for relief until after the United States Supreme Court decided *Padilla*. For the reasons explained above, we do not construe the escape clause in ORS 138.550(3) that broadly. The escape clause does not preclude petitioner from relitigating only those grounds for relief that he was certain he could win when he filed his first post-conviction petition. Rather, it precludes him raising those grounds of relief that he could not reasonably have raised in his first petition.[20]

Because we hold that ORS 138.550(3) bars the claims that petitioner alleges in his second post-conviction petition, we need not decide whether ORS 138.510(3)

---

[19] To be sure, the holdings in those intermediate appellate court decisions differ in degree from the holding that the Court announced in *Padilla*. However, those lower court decisions recognized that a lawyer's failure to take steps in negotiating a guilty plea to protect his or her client from adverse immigration consequences could constitute inadequate assistance in violation of the Sixth Amendment. Put differently, those courts did not apply the distinction between direct and collateral consequences in that context.

[20] In applying claim preclusion principles to post-conviction proceedings, the 1959 legislature made a policy choice that persons who file for post-conviction petition relief must litigate completely all grounds for relief that they reasonably could assert or risk the possibility that their claims will be foreclosed in future state collateral challenges. In this case, the timing was such that, if petitioner had sought *certiorari* in his first post-conviction proceeding, the Court likely would have held his petition pending its resolution of *Padilla* and then granted the petition, vacated the judgment, and remanded the case to the Oregon Court of Appeals for reconsideration in light of *Padilla*.

imposes the same or a different standard; that is, we need not decide whether the differing context and legislative history of ORS 138.510(3), which was enacted in 1989 and amended in 1993, lead to a more stringent or a more forgiving standard of reasonableness. Similarly, we do not need to decide whether we would choose to adhere to the federal standard of retroactivity or, if we were to adopt a different standard, what principles would inform it. It is sufficient in this case to hold that ORS 138.550(3) bars the grounds for relief alleged in petitioner's second post-conviction petition.

The Court of Appeals decision and the judgment of the circuit court are affirmed.