Argued and submitted January 2, 2014, affirmed February 23, petition for review allowed August 3, 2017 (361 Or 800)

ESTEBAN CHAVEZ,
*Petitioner-Appellant,*

*v.*

STATE OF OREGON,
*Defendant-Respondent.*

Multnomah County Circuit Court
111114537; A151251

391 P3d 801

Steven E. Benson argued the cause and filed the briefs for appellant.

Kathleen Cegla, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Ortega, Presiding Judge, and Duncan, Judge, and DeVore, Judge.

### DUNCAN, P. J.

In this post-conviction case, petitioner alleges, based on *Padilla v. Kentucky*, 559 US 356, 366-67, 369, 130 S Ct 1473, 176 L Ed 2d 284 (2010), that he was denied effective assistance of counsel because his defense attorney failed to advise him of the immigration and naturalization consequences of a guilty plea to a count of delivery of a controlled substance. The post-conviction court concluded that the petition, filed 12 years after petitioner's conviction was final, was untimely; the court further reasoned that the petition fails on the merits because *Padilla* does not provide a basis for relief for convictions that were final before that decision was issued. For the reasons that follow, we reject petitioner's arguments that he can prevail on the merits of his *Padilla*-based claim, and we affirm on that ground.[1]

The backdrop of this case is an uncommonly complex weave of state and federal law. Petitioner's underlying conviction for delivery of a controlled substance was entered in 1999, but he did not file his petition for post-conviction relief until 2011, shortly after the United States Supreme Court decided *Padilla*, 559 US at 366-67, which held that counsel's failure to give correct advice regarding clear deportation consequences of a conviction had amounted to ineffective assistance under the Sixth Amendment to the United States Constitution. Petitioner alleged that, as in *Padilla*, his attorney had not advised him of the clear immigration and naturalization consequences of his plea, and that he would not have entered into the plea agreement if his attorney had told him that he would be deported, would be barred from reentering the United States, and could not become a naturalized citizen. He further alleged that,

---

[1] Although the judgment refers to dismissal based on the "statute of limitations," the parties agree that the issue of "retroactivity"—*i.e.*, whether *Padilla* provides a basis for post-conviction relief from convictions that were final before that case was decided—was fully litigated by the parties and ruled upon by the trial court. Because we affirm the dismissal on the merits based on the issue of retroactivity, we do not address whether the petition was timely filed under ORS 138.510(3). *See Teague v. Palmateer*, 184 Or App 577, 591, 57 P3d 176 (2002), *rev den*, 335 Or 181 (2003) (concluding that a federal rule did not apply retroactively and that, "[a]s a result, we do not need to decide whether petitioner's claims were untimely under ORS 138.510(3) or were precluded by the successive petition bar of ORS 138.550(3)").

"[p]rior to the decision in *Padilla,* established case law prevented petitioner from reasonably raising the grounds for relief which he now asserts."

The state moved to dismiss the petition, arguing that petitioner could have anticipated *Padilla* and that the petition was therefore untimely. *See* ORS 138.510(3)(a) (requiring petitions for post-conviction relief to be filed within two years of the date of conviction unless the asserted grounds for relief "could not reasonably have been raised" in a timely manner). The state also argued that the petition fails because the procedural rule announced in *Padilla* "is not retroactive and does not apply to his case"—*i.e.,* it does not provide a basis for relief from convictions that were final before *Padilla* was decided. The post-conviction court agreed with both of the state's contentions, and it dismissed the petition.

Petitioner then appealed the post-conviction judgment and, in his opening brief, argued that the petition came within the exception to the two-year filing period because *Padilla* announced a rule of law that could not reasonably have been anticipated before that decision. As for the merits, petitioner's challenge to the court's analysis of retroactivity was two-fold and mirrored his contentions in the post-conviction court. Petitioner argued that, contrary to the post-conviction court's ruling, *Padilla* announced a rule that applies retroactively under the test set out in *Teague v. Lane,* 489 US 288, 311, 109 S Ct 1060, 103 L Ed 2d 334 (1989) (plurality). Alternatively, petitioner argued that retroactivity principles for purposes of federal habeas relief do not constrain the ability of state courts to grant relief in post-conviction proceedings, *see Danforth v. Minnesota,* 552 US 264, 128 S Ct 1029, 169 L Ed 2d 859 (2008) (so holding), and that, as a matter of state law, Oregon's Post-Conviction Hearing Act was never intended to limit relief based on retroactivity principles.

Since petitioner filed his opening brief, there have been a number of state and federal appellate decisions bearing on his *Padilla*-based claim. First, in *Chaidez v. United States,* 568 US 342, 133 S Ct 1103, 185 L Ed 2d 149 (2013), the United States Supreme Court addressed one of the predicate issues in this case: whether the rule announced in

*Padilla* is retroactive under the *Teague* analysis. In *Chaidez*, the Court held that it is not: "[U]nder the principles set out in [*Teague*], *Padilla* does not have retroactive effect." 133 S Ct at 1105.

Shortly thereafter, in *Saldana-Ramirez v. State of Oregon*, 255 Or App 602, 607, 298 P3d 59, *rev den*, 354 Or 148 (2013), we applied that federal retroactivity rule in a state post-conviction proceeding, holding that *Chaidez* "foreclosed" the petitioner's *Padilla*-based claim where, as in this case, the conviction became final before *Padilla* issued. We reasoned:

> "[U]nder federal retroactivity principles as elucidated in *Chaidez*, *Padilla* does not apply to petitioner's collateral challenge. '[F]ederal retroactivity principles govern whether a new federal rule applies retroactively in [Oregon] court.' *Miller v. Lampert*, 340 Or 1, 7, 125 P3d 1260 (2006) (citing *Page v. Palmateer*, 336 Or 379, 385-86, 84 P3d 133, *cert den*, 543 US 866 (2004)). Accordingly, we affirm."

*Id.* at 608 (bracketed material in *Saldana-Ramirez*; footnote omitted). We thereby implicitly rejected another of the arguments that petitioner makes in this case: that, in light of *Danforth*, federal retroactivity principles have no application to Oregon post-conviction cases. That is, notwithstanding the holding in *Danforth* that states are free to apply their own retroactivity principles, we continued to follow *Miller* and *Page*, two cases that predated *Danforth* and remained the most recent pronouncements from the Oregon Supreme Court as to whether Oregon courts apply federal retroactivity principles to state post-conviction cases.[2] *Accord Frias v.*

---

[2] In *Page*, the court held that, "when interpreting the federal constitution or applying Supreme Court rulings that are based on its interpretation of the federal constitution, we must comply with what the Supreme Court has stated." 336 Or at 386 (relying on *Oregon v. Hass*, 420 US 714, 719, 95 S Ct 1215, 43 L Ed 2d 570 (1975), and *American Trucking Assns. v. Smith*, 496 US 167, 177-78, 110 S Ct 2323, 110 L Ed 2d 148 (1990)). The holding in *Page* represented a departure from the court's earlier statement in *State v. Fair*, 263 Or 383, 387-88, 502 P2d 1150 (1972), that "we are free to choose the degree of retroactivity or prospectivity which we believe appropriate to the particular rule under consideration, so long as we give federal constitutional rights at least as broad a scope as the United States Supreme Court requires." In *Danforth*, the United States Supreme Court noted that history and observed that the decision to change course in *Page* was "misguided" and based on an incorrect reading of *Hass* and *American Trucking Assns.*, 552 US at 277 n 14.

*Coursey*, 229 Or App 716, 717, 215 P3d 874, *rev den*, 347 Or 258 (2009) ("In petitioner's view, *Danforth* specifically calls into question the reasoning in *Miller* and *Page. See Danforth*, 128 S Ct at 1039 n 14 (describing the decision in *Page* as 'misguided'). Whatever the merits of petitioner's argument, it is properly addressed to the Oregon Supreme Court.").

In the wake of *Saldana-Ramirez*, we summarily rejected similar arguments that *Padilla* applies retroactively in state post-conviction proceedings. *See, e.g., Sandoval v. State of Oregon*, 261 Or App 864, 322 P3d 1161, *rev den*, 355 Or 668 (2014) (*per curiam* citing *Saldana-Ramirez*). Then, in one of those cases, the Supreme Court allowed review specifically to address the import of *Danforth*. In *Verduzco v. State of Oregon*, 357 Or 553, 555, 355 P3d 902 (2015), a case in which we had summarily affirmed the post-conviction court in an order citing *Saldana-Ramirez*, the Supreme Court began its decision by explaining:

> "In [*Danforth*], the United States Supreme Court held that state courts may apply new federal constitutional rules retroactively in state post-conviction proceedings even though those rules do not apply retroactively in federal habeas corpus proceedings. We allowed review in this case to consider the principles that Oregon courts should follow in exercising the authority that *Danforth* recognized."

The court then described the parties' competing arguments regarding retroactivity, stating that, "[i]n *Saldana-Ramirez*, the Court of Appeals noted that this court's decisions before *Danforth* had followed federal retroactivity analysis, and the Court of Appeals signaled that it would do so too until we exercised our authority under *Danforth* to take a different course. *See* 255 Or App at 608; *see also Frias v. Coursey*, 229 Or App 716, 215 P3d 874 (2009)." *Verduzco*, 357 Or at 560 n 4.

The court then further described the effect of *Danforth*:

> "As noted, the United States Supreme Court held in *Danforth* that states may apply new federal rules retroactively in state post-conviction proceedings even though those rules would not apply retroactively in federal habeas. Essentially, the Court held in *Danforth* that federal

retroactivity analysis does not define the scope of the federal right. 552 US at 275. Indeed, in *Danforth*, the Court described the federal retroactivity analysis that it had announced in *Teague* as an interpretation of the federal habeas statute. *Id.* at 278.

"After *Danforth*, each state is free to determine when new federal rules should be applied retroactively in state post-conviction proceedings. Such determinations can include a consideration of the state's interest in the finality of convictions, the effect of the new federal right on the validity of the conviction, the need for predictable retroactivity rules, and the value of additional review. *See* Paul M. Bator, *Finality in Criminal Law and Habeas Corpus for State Prisoners*, 76 Harv L Rev 441 (1963) (discussing considerations that can inform when courts should revisit final convictions); *cf. Danforth*, 552 US at 273-74 (explaining that the current federal rule was adopted, among other things, to ensure predictable results)."

357 Or at 562-63.

As it turned out, however, the court did not ultimately reach the retroactivity question on which it had allowed review. *Id.* at 563 ("Even though we allowed review to consider when new federal rules will apply retroactively in Oregon, we conclude that this case does not provide an occasion to decide that issue."). Instead, the court concluded that petitioner had raised the same grounds for relief in an earlier petition for post-conviction relief, which barred his claim for relief under ORS 138.550(3) (the rule against successive petitions). Thus, the court concluded its decision by stating, "[W]e do not need to decide *whether we would choose to adhere to the federal standard of retroactivity or, if we were to adopt a different standard, what principles would inform it.* It is sufficient in this case to hold that ORS 138.550(3) bars the grounds for relief alleged in petitioner's second post-conviction petition." *Id.* at 574 (emphasis added).

With that background, we return to the arguments that petitioner raises with regard to retroactivity in this case. First, petitioner argues that, under the federal analysis, *Padilla* announced a rule that must be applied retroactively. As stated previously, that contention is now foreclosed by the United States Supreme Court's decision in *Chaidez*, 568 US at 344, and we do not discuss it further.

That leaves petitioner's alternative contention that federal retroactivity principles do not control whether the rule announced in *Padilla* applies in this state post-conviction case. As the court in *Verduzco* noted, we previously signaled that we would follow federal retroactivity principles until the Oregon Supreme Court "exercised [its] authority under *Danforth* to take a different course." 357 Or at 560 n 4. The court's discussion in *Verduzco*—and its express recognition that, "[a]fter *Danforth*, each state is free to determine when new federal rules should be applied retroactively in state post-conviction proceedings," 357 Or at 562—calls that approach into question, at least to the extent that we had previously considered ourselves to be bound by *Page* and *Miller*. And, if petitioner in this case were asking us to exercise our authority to depart from the federal standard, we would be confronted with the same questions that the court posed but did not answer in *Verduzco*: "whether we would choose to adhere to the federal standard of retroactivity or, if we were to adopt a different standard, what principles would inform it."[3] 357 Or at 574. But that is *not* petitioner's argument.

Petitioner's argument is not based on our authority (or, for that matter, the Oregon Supreme Court's authority) to craft a state standard of retroactivity. Rather, petitioner posits that Oregon courts lack any such authority because the legislature, in enacting the Post-Conviction Hearing Act in 1959, intended to provide relief based on the denial of constitutional rights "regardless of whether they are deemed under current jurisprudence to apply retroactively or prospectively." In other words, petitioner argues that the Oregon legislature already made the choice authorized by *Danforth*, and that, based on the text, context, and legislative history of the Post-Conviction Hearing Act, there is no retroactivity limitation on post-conviction relief for constitutional violations. Thus, petitioner argues, "[w]hen the Legislative Assembly has not included a retroactivity requirement as part of the Post-Conviction Hearing Act, the judiciary has no power to insist upon it."

---

[3] We would also be required to ask an additional question: whether we, as opposed to the Oregon Supreme Court, should decide those questions in the first instance.

Petitioner's argument is inconsistent with our previous interpretation of the Post-Conviction Hearing Act in *Teague v. Palmateer*, 184 Or App 577, 57 P3d 176 (2002), *rev den*, 335 Or 181 (2003), as well as the Oregon Supreme Court's longstanding approach to that act. In *Teague*, we specifically addressed whether the concept of retroactivity applies to state post-conviction cases. We explained that, whereas parts of the Post-Conviction Hearing Act address issue preclusion, "Oregon's approach to retroactivity is reflected in a nearly 40-year-old body of settled precedent." 184 Or App at 581. After tracing the history of the Post-Conviction Hearing Act, we explained:

"Consistently with that general design, the availability of relief under Oregon's post-conviction statutes depends on two factors. First, a petitioner must seek *substantive* relief that would have been available through a writ of habeas corpus. *Bartz v. State of Oregon*, 314 Or 353, 361, 839 P2d 217 (1992). That principle is codified in ORS 138.530(2), which effectively provides that the substance of habeas corpus relief remains available to a person who petitions for relief under the post-conviction statutes. *Bartz*, 314 Or at 361. Second, a petitioner must follow the proper *procedures* for obtaining that relief. *Id.* As pertinent here, the statutes codify issue preclusion principles that turn on the availability of prior judicial proceedings to address a petitioner's claims. * * *

"Issue preclusion and retroactivity are distinct concepts and traditionally have been treated as such. From the earliest cases decided under Oregon's post-conviction statutes, petitioners have been able procedurally *to assert* claims based on unanticipated and newly announced constitutional principles, but their ability *to prevail* on those claims has depended on the retroactivity of the constitutional principle at work. Such cases are legion. *See, e.g.,* [*North v. Cupp*, 254 Or 451, 459-62, 461 P2d 271 (1969), *cert den*, 397 US 1054 (1970)] (one of petitioner's claims barred by statutory issue preclusion principles; claim based on newly announced *Escobedo/Miranda* doctrine could be raised but was not a basis for relief because doctrine was not retroactive); *Church v. Gladden*, 244 Or 308, 311-13, 417 P2d 993 (1966) (similar). As we explained in *Myers v. Cupp*, 49 Or App 691, 621 P2d 579 (1980), *rev den*, 290 Or 491 (1981), whether a new constitutional rule provides an exception to

issue preclusion and also is retroactive are complementary inquiries; a petitioner must satisfy both to be entitled to post-conviction relief:

> "'[A]n exception to the general rule that an issue raised and considered on direct appeal cannot be reconsidered in a post-conviction proceeding applies where the law with respect to that issue has changed since the time of appeal *and that new law is to be applied retroactively.*'

> "49 Or App at 695-96 (emphasis added; citation omitted). In a more recent post-conviction case, the Oregon Supreme Court similarly observed that a 'court *must* analyze retroactivity' when considering whether to apply a newly announced rule to a post-conviction case. *Moen v. Peterson*, 312 Or 503, 508-10, 824 P2d 404 (1991) (emphasis added) (declining to determine what retroactivity standard should apply because constitutional rule invoked by petitioner was not new). In short, assessing the retroactivity of a newly announced constitutional rule is a necessary and legitimate step in the analysis of whether post-conviction relief should be awarded on the basis of that new pronouncement. The inquiry is not subsumed in the statutory standards pertaining to when new issues are procedurally proper to assert."

184 Or App at 583-85 (footnotes omitted; emphasis in original).

Petitioner acknowledges our holding in *Teague* but argues that "an examination of the precedent relied upon in *Teague* and other Oregon cases shows that the 'retroactivity' requirement is not based upon any provision of the Oregon Post-Conviction Hearing Act, ORS 138.510 to 138.680," and that the "'retroactivity' requirement appears to be an unwritten amendment that the courts have inserted into Oregon's post-conviction jurisprudence and is simply bad law."

As we recently explained in *State v. Civil*, 283 Or App 395, 416, 388 P3d 1185 (2017), "we must not, and do not, 'lightly overrule' our precedents, including those construing statutes." (Quoting *Aguilar v. Washington County*, 201 Or App 640, 648, 120 P3d 514 (2005), *rev den*, 340 Or 34 (2006)). We only overrule cases that are "'plainly wrong,' a rigorous standard grounded in presumptive fidelity to *stare decisis*."

*Id.* at 406. Thus, "we begin with the assumption that issues considered in our prior cases are correctly decided, and the party seeking to change a precedent must assume responsibility for affirmatively persuading us that we should abandon that precedent." *Farmers Ins. Co. v. Mowry*, 350 Or 686, 698, 261 P3d 1 (2011) (internal quotation marks omitted). Here, petitioner's arguments do not satisfy that standard.

First, the analysis in *Teague* was not unmoored from the text of the Post-Conviction Hearing Act, as petitioner suggests. After carefully tracing the history of that act, we considered the "general design" of the statute, as well as the principle "codified in ORS 138.530(2), which effectively provides that the substance of habeas corpus relief remains available to a person who petitions for relief under the post-conviction statutes." 184 Or App at 582-83. Even if we did not expressly state that the text, context, and history of the Post-Conviction Hearing Act do not foreclose the application of retroactivity principles, that conclusion was necessarily implicit in our analysis.

Second, petitioner's argument depends largely on what inferences to draw from the fact that the Post-Conviction Hearing Act is silent with regard to retroactivity. That is, petitioner does not point to any text, context, or legislative history that establishes that the legislature affirmatively considered the question of retroactivity; rather, his argument is that such a limitation would not have occurred to the legislature at all, because it was not addressed by the Supreme Court until 1965 in *Linkletter v. Washington*, 381 US 618, 85 S Ct 1731, 14 L Ed 2d 601 (1965), six years after the Post-Conviction Hearing Act was enacted. Even assuming that petitioner's understanding of the history of retroactivity is correct,[4] we will not revisit our decision in *Teague*, let alone a half-century of settled law in Oregon, simply because petitioner would draw a different inference

---

[4] Petitioner draws from the dissenting opinion in *Danforth*, in which Chief Justice Roberts wrote, "As the court correctly points out, before 1965 we took for granted the proposition that all federal constitutional rights, including rights that represented a break from earlier precedent, would be given full retroactive effect on both direct and collateral review. That all changed with *Linkletter v. Walker*, 381 US 618, 85 S Ct 1731, 14 L Ed 2d 601 (1965)." 552 US at 293 (Roberts, C. J., dissenting).

from the legislature's silence on that issue. *See Mowry*, 350 Or at 698 ("Stability and predictability are important values in the law; individuals and institutions act in reliance on this court's decisions, and to frustrate reasonable expectations based on prior decisions creates the potential for uncertainty and unfairness.").

Finally, as an overarching matter, petitioner has failed to persuade us that we are even the proper court to address his argument regarding the effect of the Post-Conviction Hearing Act. In *Teague*, we were not writing on a blank slate; our understanding of retroactivity as applied to the Post-Conviction Hearing Act was "reflected in a nearly 40-year-old body of settled precedent"—predominantly cases decided by the Oregon Supreme Court. 184 Or App at 581; *see also, e.g., Church*, 244 Or at 313 (holding, in a post-conviction case, the "[p]etitioner may not take advantage of any new rights bestowed by [*Escobedo v. State of Illinois*, 378 US 478, 84 S Ct 1758, 12 L Ed 2d 977 (1964)], because his conviction was final before *Escobedo* was decided"). Although petitioner attempts to undermine the reasoning in those cases, such as *Church*, in which the Supreme Court applied retroactivity principles to deny post-conviction relief,[5] we are not in a position to overrule the Supreme Court, nor are we inclined to revisit our own well-considered opinion to the extent that it was based on those earlier Supreme Court cases.[6]

For those reasons, we reject petitioner's argument that the Post-Conviction Hearing Act precludes the application of retroactivity principles to deny relief in this case, and we affirm the judgment of the post-conviction court.

Affirmed.

---

[5] Petitioner suggests that Oregon courts, including the Supreme Court, incorrectly "imported" retroactivity principles from criminal trials into "post-conviction relief hearings without the realization that this was a different world not ruled by the discretion of judges, but by statutes and legislative policy."

[6] Although petitioner's claim for relief also alleges that he was denied his right to adequate assistance of counsel under the Oregon Constitution, his arguments on appeal relate exclusively to his *Padilla*-based claims. Accordingly, we do not address any issues related to a state constitutional claim.